## PHELAN v. THE COUNTY OF SAN FRANCISCO.

The law conferring other than judicial functions upon the Courts of Sessions was unconstitutional and void; and any contract, not incident to their judicial functions, made by a Court of Sessions, under its provisions, is a nullity.

Such a contract being void, could not be made valid by subsequent ratification of the board of supervisors.

But, conceding that the purchase, by the Court of Sessions, of a lot of land for a Courthouse was not void, but only voidable, the subsequent action of the board of supervisors of the county, in taking care of and preserving the property, is not a ratification of the purchase which will bind the county.

To charge them, it should be shown that they acted with a full knowledge of the facts.

A deliberative body, like the board of supervisors, cannot be bound by acts *in pais ;* the best and only evidence of its intentions is to be drawn from the record of its proceedings.

Moreover, such a deed was void for want of competent parties ; as, at the time of the sale, there was no person, natural or artificial, *in esse,* capable of taking it.

APPEAL from the Superior Court of the City of San Francisco.

The plaintiff filed a bill in equity against the county of San Francisco, to enforce a specific performance of the following contract, as set forth in the bill :    The Court of Sessions of San Francisco county, acting under the provisions of the Act of April 11th, 1850, purchased, June 20th, 1850, of Edmund Laffan, D. W. Coit and J. W. Morse, a certain lot of land on the west side of Brenham Place, in the city of San Francisco, for a county-building site, for which they agreed to pay the sum of $60,000, payable one-half July 1, 1851, and the balance July 1, 1852, with interest at the rate of three per cent. per month, payable semi-annually.    The deed for the lot was duly executed and recorded, and possession of the lot surrendered to the county, the Court of Sessions taking possession thereof, and receiving, for some time, the rents accruing therefrom.    The Court of Sessions continued to transact the business of the county, and manage and control its affairs until the appointment of a board of supervisors for the county, under the Act of April 29, 1851, who thereafter assumed and continued to take charge of the county affairs.    Laffan, Coit and Morse received from the Court of Sessions, upon the execution of the deed, evidences of the indebtedness of the county to them for the agreed price of the lot, and interest, which they presented to the county auditor, who issued to them therefor warrants on the county treasurer for the amount of principal, drawing interest as above stated.    These warrants were presented to the county treasurer, but not paid—the treasurer endorsing them "not paid,

for want of funds." Of these the plaintiff is owner and holder of warrants for the sum of five thousand dollars, with interest due thereon to the amount of eight thousand dollars.

The plaintiff further alleges that the board of supervisors, since the first appointment of that body, has constantly retained possession of the land thus conveyed to the county, except so far as it had conveyed it to *bona fide* purchasers, without notice, and has never offered to re-convey the same to the grantors; and has thus by its acts recognized and ratified the sale of Laffan, Coit and Morse to the Court of Sessions, for the county; that the warrants thus issued were in the market, like other county warrants, and that when the plaintiff purchased his, he had no doubt of their validity, and purchased them upon the faith of the county credit; that they had never been paid, although duly presented and payment thereon demanded. He therefore prays that he may have judgment against the county for the amount called for by his warrants, and that the land, in payment of which the warrants were issued, may be sold, and the proceeds of the sale be appropriated to the payment of his judgment.

The defendant demurred to the complaint; the demurrer was overruled, and the defendant failing to answer, judgment and decree, as prayed for in the bill, were entered in favor of plaintiff. Defendant appealed.

*E. R. Carpentier and F. M. Haight* for Appellant.

I. The warrants sued upon are separate and independent of the conveyance. The ratification of the purchase, if it could be ratified, did not extend to a ratification of the independent contract to pay a stipulated price, the existence of which does not appear to have ever been within the knowledge of the county. It is not even alleged that the county ever ratified the contract to pay, or that the acts, from which its ratification of the conveyance of the land to the Court of Sessions is implied, were performed with knowledge of the outstanding obligations on which this suit is brought. And still the plaintiff bases his claim to recover, upon the warrants, and not upon the value of the property.

II. The Court of Sessions could not be an agent *de facto* of the county.

The Constitution of the State of California prohibits the Court of Sessions from being the agent of the county, or acting as its agent in the management of its civil affairs. (Burgoyne *v.* The Supervisors.) And as every one has notice of the provisions of the Constitution, he is bound to know that in assuming to act as agent of the county, the Court of Sessions disregarded the constitutional prohibition.

III. The contract was illegal and void, and incapable of ratification.

The Supreme Court has decided that not even the Legislature could authorize the Court of Sessions to make this contract, nor to purchase or take the land; that the Constitution has prohibited the granting of any such power to the Court of Sessions. As a ratification of a contract is only equivalent to a prior authority, it follows that in those cases where an antecedent authority would be null, a ratification would be also null.

In this case the Legislature had granted the power to the Court of Sessions to act as agents of the county, and by their acts to bind it. The Supreme Court has decided that the Act of the Legislature was a nullity.

If the Legislature could not confer this power upon the Court of Sessions, *a fortiori* the county could not do so. If then the county could not even by an express vote confer this power upon the Court of Sessions, it follows that a ratification would be equally ineffectual.

But it has never been held or contended that a corporation could make itself liable by matter *in pais*, where it could not have made itself liable by an express vote. A vote of the county, giving express authority to the Court of Sessions, would have been as void as the act of the Legislature, because forbidden by the Constitution.

In the case of Delafield *v.* State of Illinois, 2 Hill, 175, the Court says: "None of them had any authority to make such contracts as these were, and if they could not make them originally, they could not ratify them."

IV. The contract having its inception in a violation of law is incapable of ratification, as it would be incapable of enforcement under any circumstances.

"If from the plaintiff's own statement or otherwise, the cause of action appear to arise in the transgression of positive law, he has no right to be assisted." Lord Mansfield, in Holman *v.* Johnson, Cowp., 343.

An attempt to contravene the policy of a public statute is illegal, though the statute contains no express prohibition of such attempt. Sharp *v.* Teese, 4 Halst., 352.

If a contract be void as against the policy of the law, the Court will neither enforce it while executory, nor relieve a party from loss by having performed a part.

The law will neither aid in its own infraction, nor will it sanction and enforce that which it inhibits. Foote *v.* Emerson, 10 Vt., 344; Hanson *v.* Power, 8 Dana, 91; Pratt *v.* Adams, 7 Paige, 653; Chit. Contr., 673, note (1); ib., 692, note (1).

It cannot be argued that because the prohibition of the Constitution extended only to the Court of Sessions, one of the parties in the contract, and not to the subject of contract itself, that therefore the latter was merely voidable. There must be two parties to every contract, and if one party is by law forbidden to act, his act is a nullity.

V. There was no conveyance of land either to the county or to its use; and there could not be any ratification of the contract or any part of it by the county.

1. Because of the incapacity of the Court of Sessions to take the title, and

2. Because there was no such corporation as the County of San Francisco, at the time of the alleged conveyance. In the division of the State into counties, certain territory had been set apart and called "The County of San Francisco," but the Legislature had not conferred upon it special privileges, nor any constitutional government. The Act

in regard to the Court of Sessions was the only organization which had been attempted, and that was a violation of the Constitution. In Hunsaker v. Bordan, decided at the July Term of this Court, (5 Cal. R.) the Court says: "A county is not a person in any sense. It is not a corporation. It cannot sue and be sued. A county government is a portion of the State government."

There was not then in existence, in 1850, any corporation called the County of San Francisco, capable of making the contract, nor capable of receiving lands on behalf of that portion of the State government known as the county. The Legislature had attempted to confer this power upon the Court of Sessions, but as this Act was null, no power to make contracts of this kind was created.

The conveyance was therefore null and void. To make a conveyance there must be a grantee as well as a grantor, for if the estate passed to nobody it passed from nobody.

The conveyance to the county direct would have had no more effect than would a conveyance to a ward, township or election precinct, for it was no more a corporation than one of these. See Town of Pawlet v. Clark, 9 Cranch, 292; 8 John., 385.

The Act of April 29, 1851, creating a board of supervisors for the county of San Francisco and defining their duties, gave no power to this board to purchase lands for the county, nor to make any such contract as the one mentioned in the complaint, and no such power was conferred till May 3d, 1852, when by the "Act to create Boards of Supervisors for the counties of this State, and to define their powers and duties," the board of supervisors for the county of San Francisco received the power "to purchase and receive any property necessary for the use of the county." At the time of making the contract sued upon, and for two years after, there was neither agent capable of contracting, nor principal capable of receiving lands or ratifying the contract. The contract sued on, was therefore, void for want of parties and for want of consideration.

VI. The board of supervisors, prior to May 3d, 1852, had no power to ratify the contract, if it was susceptible of ratification. Neither could the board with the accumulated powers conferred by the Act of May 3d, 1852, because they could not have originally authorized it. The supervisors are agents with delegated powers, specifically defined, and the rule of law is well settled that delegated agents cannot delegate their powers to others. The power of the board is to purchase lands, "absolutely necessary for the use of the county;" requiring the exercise of their discretion in determining the necessity of the purchase. Aside from the constitutional objections, they could not have delegated that power originally to the Court of Sessions, and so they cannot ratify those acts when done. Smith v. Morse, 2 Cal., 539.

VII. The principle of estoppel does not apply in this case against the county; and herein lies a distinction between this case and those cited and relied upon by the counsel for the respondent.

1. There was no representation of any kind made by the county on

which the plaintiff has acted. The only misrepresentation was that of the Court of Sessions, who claimed to be agents of the county. But the plaintiff was bound to know that such was not the case, because against the prohibition of the Constitution.

2. The county has not done or suffered any acts to the prejudice of the plaintiff. It has gained no advantage over the plaintiff, by misleading him or otherwise, nor has it acted at all with knowledge of the facts.

3. If we regard the county as a corporation, still it had no right by the Constitution to make this contract, and a corporation is not estopped by the consideration they have received, from denying their competency to make the contract; for if so, the estoppel would apply equally to the other contracting party, and the limitation upon the power of the corporation would be of no avail. An estoppel must be reciprocal; it must bind both or neither. Angell & Ames on Corp., § 256, and authorities there cited.

No facts amounting to a ratification are averred by the plaintiff or can be inferred from the fact that the county has not offered to convey to him a title to land which it never received. It is not alleged or pretended that the county or the board of supervisors ever knew of the contract on which the suit is brought, or that either the county or the board, in view of all the facts, ever performed or suffered an act which would amount to a ratification; but the board, by solemn vote, the only mode by which they could act, had no power to ratify the contract. The acts of agents who had no power to make the contract, would not avail to ratify it. An unauthorized contract entered into by State agents, acting under limited powers, conferred by statute, cannot be ratified by any acts of the Governors or other officers, but only by the State itself. Delafield *v.* State of Illinois, 2 Hill, 160; People *v.* Phœnix Bank, 24 Wend., 431; 15 Vt., 147.

The point that the plaintiff cannot enforce any equitable remedy against the land on the supposed vendor's lien, is, I think, sufficiently raised by the demurrer. Elderkin *v.* Schultz, 2 Blackf., 345; Cathcart *v.* Lewis, 1 Vesey, Jr., 463.

But it is of no importance. The plaintiff avers that he "relied upon the faith of the county," when he took the paper. Again, he charges that the county has disposed of some of the land. These averments destroy the vendor's lien, if it ever existed.

The respondent urges the abstract justice of his case. The Court will not bend the settled rules of decision to meet a particular case. And even in defeat, the respondent cannot complain of great hardship, for the land has never passed to the county. Let him take his share of it, or have his remedy against those to whom he has paid his money.

*S. L. Burritt* for Respondent.

*First Point by Respondent.*—The Court of Sessions, from the organization of the State, in 1850, till June, 1851, was *de facto* the county government; and having come into office, and exercised their functions

under color of right and in good faith, their acts, within the limits of the powers mentioned, and intended to be conferred on them by the statute, are binding upon the county. Angell & Ames on Corporations, p. 272, § 4; 2 Treadway's Cons. Rep., 696; Taylor v. Skrine, 3 Brevard Rep., S. C., 516; McBee v. Hoke, 2 Speer (S. C.) 138, and see the cases cited in this decision. See also State v. Hill, 2 Speer, 150.

Where an officer is in the actual discharge of the duties of his office, without his title being questioned in any legal way, the community in which he lives have a right to regard him as a legal officer, and his official acts, as to them, are valid. Kottman v. Ayer, 3 Strob. Rep., 92.

*Second Point.*—Whether the contract of purchase of the ground in question by the Court of Sessions was binding upon the county or not, at the time when it was made, the county, by its corporate authorities having power, have since adopted and ratified that contract, by taking, using, enjoying, controlling and disposing of the property, etc.

Not only estoppels technically so called, but estoppels *in pais*, operate for and against corporations. Angell & Ames, 216.

Though a contract made by a purchasing committee is not binding on the corporation, the ratification of this contract by the corporation may be inferred from facts attending the transaction; and generally, if persons assuming to act as agents of a corporation, but without legal authority, make a contract, and the corporation receive the benefit of it, and use the property acquired under it, such acts will ratify the contract and render the corporation liable thereon.

Indeed, by the whole course of decisions in this country, corporations in their contracts are placed upon the same footing with natural persons, open to the same implications, and receiving the benefits of the same presumptions. Angell & Ames, 218, 269, 298, 308; Story on Agency, 249, §§ 251, 253; 2 Met., 167, Burrill v. Nahant Bank; 7 Greenl., 76, Hayden v. Madison; 2 Fairfield, 234, Trott et al. v. Warren; Feb., 1817, 1 N. H., 26, Eastman v. Coos Bank; 12 N. H., 206, Despatch Line of Packets v. Bellamy Man. Co. and Trustees; March, 1823, 1 Pick., 296, Proprietors of Canal Bridge v. Gordon; 1 Pick., 373, The Episcopal Cathedral Society v. The Episcopal Church in Dedham; 2 Pick., 345, Damon v. Inhabitants of Granby; 21 Pick., 276; 19 ib., 511; 2 Cow., 253; 16 Conn., 388; 19 Phil. Rep., 60; 20 Johns. Rep., 338; 6 Cow. Rep., 445; 5 Hill, 137; 3 Halsted, 182; Watts, 386, 387; 1 Watts & Serg., 106; 14 Penn. State Rep., 83.

*Third Point.*—Corporations in respect to their contracts are upon an equal footing with individuals, or natural persons; open to the same implications, and entitled to the benefit of the same presumptions.

*Fourth Point.*—The incapacity of the Court of Sessions to make a contract on behalf of the county, did not render the contract void, inasmuch as under it the county received the property, and to avoid the contract, it was necessary to restore the property acquired under it.

But if it was void, it was not of that class of void contracts which are incapable of being made valid by subsequent adoption or ratification, as being illegal, immoral or against public policy.

There are two degrees in which the acts or instruments of a party appear to be not binding.

First, by being considered as if they had never existed; that is wholly void.

Second, as being defeasible at the election of the party with whom they originated; that is voidable only.

The contract of the Court of Sessions was not, then, a void contract. It existed and survived to their successors, the board of supervisors, who, representing the county, received the benefit of it. All this is admitted by the defence. There were but two modes of treating this contract. The one was to rescind it, and restore the property, or to offer to do so. The other, was to keep it, and make no objection. The county preferred the latter. The most that can be said is, that the county might have avoided the contract. Instead of doing so, however, they availed themselves of it, to keep, control, use, and dispose of the property acquired under it. This contract was neither contrary to good manners, nor against public policy, nor was it immoral. It had none of the noxious qualities spoken of by Mr. Justice Story, as rendering a contract void. If the Legislature could confer no authority upon the Court of Sessions to purchase property because the Constitution by implication disqualified them, that could not render the contract void, if those who succeeded or might succeed them, having undoubted power to make such a contract, chose to avail themselves of the benefit of the one already made.

As to the validity of contracts not authorized by law, see Parker *v.* Rochester, 4 Johns. Ch. R., 322; also, Thayer *v.* Boston, 19 Pick., 511.

*Jo. G. Baldwin* for Respondent.

1. It will not be contended that the county is not a corporation. See Angell & Ames on Corp., p. 19; 13 Wend., 325; 1 Cowen, 685; 7 Mass., 157; 13 Mass., 198; 10 Pick., 188; 18 Johns., 407; 2 Day, 259; 2 Kent's Com., 224, 225, 278. But the counties of this State are expressly empowered to sue and be sued. See Cal. Laws, p. 236, § 7, Act of May 11, 1854, chap. 122.

The Court of Sessions, claiming to be the authorized agents of the county of San Francisco, and in the open exercise of an apparent agency, created by Act of the Legislature, passed April 11, 1850, made a contract with Edmund Laffan and others, for certain property to be used for the benefit of, and to enure to the county, for its public purposes; and in consideration of the conveyance of this property to this use, as said agents, executed certain obligations on behalf of the county and purporting to bind the county for the purchase money.

After this contract was made, the board of supervisors was constituted, and with knowledge of the contract and of these proceedings did certain acts which we claim to be a ratification of the contract made by the Court of Sessions.

The question upon these facts which the Court is called to solve is:

Is the county responsible for the purchase money so agreed to be paid? and this question involves two others:

1. Could the board of supervisors ratify a contract made by the Court of Sessions?

2. If so, do these facts amount to a ratification?

In this case the Court of Sessions, claiming to be the agents of the county, made this contract in her name; but the Court of Sessions were not the agents of the county; the board of supervisors were the agents of the county, as much authorized to bind her by adopting a contract already made, *as* by making a new one for themselves; they did ratify this contract so made. Why is not this ratification equivalent to an original authority? Can it be doubted that if the board of supervisors, coming into office and finding this contract made by the Court of Sessions, and seeing that it was not binding, because not legally made, had then desired to make the contract, and get the benefit of it; can it be questioned that if the board of supervisors had passed an order for the purchase of this property, and confirmed this contract, that it would have been as valid as if the whole thing had been gone over again *ab initio?* If that be so, then the power of ratification is of course conceded, and this leaves open only the question of the mode of ratification.

The rules of law which determine the power of corporations to affirm contracts, and which fix the effect of particular acts of affirmation are well settled. By the modern decisions, the contracts of corporations rest upon the same footing as those of natural persons and are governed by the same rules and laws. Bank of Columbia v. Patterson, 7 Cranch, 299; Flecker v. The Bank of the U. S., 8 Wheat., 338; Bank of the U. S. v. Dandridge, 12 ib., 64; Mott v. Hicks, 1 Cowen, 513; Chestnut Hill Co. v. Rutter, 4 Serg. & Rawle, 16; School District v. Wood, 13 Mass., 199; Union Bank v. Ridgley, 1 Har. & Cull., 324. Or arising by implication of law, either from the acceptance of an executed consideration. Bank of Columbia v. Patterson, 7 Cranch, 299; Kennedy v. Baltimore Ins. Co., 3 Har. & Johns., 367; Dunn v. St. Andrew's Church, 14 Johns., 118; Episcopal Church Society v. The Episcopal Church, 1 Pick., 372; Proprietors of Canal Bridge v. Gordon, 1 ib., 297. Or from ratification of acts done on behalf of the corporation by parties assuming to act as agents, although without sufficient authority, see Episcopal Society v. Episcopal Church, *supra;* Randall v. Van Vechten, 19 Johns., 60. Or from long silence and acquiescence. Story on Agency, § 255, and authorities there cited. And that any one of these things will work a ratification, besides the authorities above cited, see Angell & Ames on Corp., pp. 132, 212, 213, 214, 215, 216, 217, 218, 239, 269, 298, 308; Story on Agency, 250, §§ 251, 253, 256, 259; Burrill v. The Nahant Bank, 2 Metcalf, 167; Hayden v. The Inhabitants of Madison, 7 Greenl., 76; Abbott v. The District of Hermann, ib., 121; Trott v. Warren, 2 Fairfield, 234; Despatch Line of Packets v. The Bellamy Man. Co. & Trustees, 12 New Hamp., 206; Damon v. The Inhabitants

of Granby, 2 Pick., 345; Thayer v. The City of Boston, 19 ib., 511; Bulkley v. The Derby Fishing Co., 2 Conn., 252; Fuller v. Naugatuck Railroad Co., 21 ib., 557; Danforth v. Scoharie Turnpike Co., 12 Johns., 237; Randall v. Van Vechten et als., 19 ib., 60; Brown v. Bell, 20 ib., 338; Gale v. Nixon & Nixon, 6 Cowen, 445; Moss v. Rossie Lead Mining Co., 5 Hill, 137; Mulford v. Trustees of Baptist Church, 3 Halsted, 182; Gordon v. Preston, 1 Watts, 385; Bank of Penn. v. Reed, 1 Watts & Serg., 101; Fox v. Northern Liberties, 3 Watts & Serg., 103; Alleghany City v. McClurkan, 14 Penn., 83.

Having shown that the contract of corporations, unless restrained by law, rests upon the same footing as those of natural persons; and having shown that in this case there is no such restraint, it only remains to consider whether these facts, in case of an individual, would create a ratification of such contract. To state such a proposition is to answer it.

If the contract be affirmed, it takes effect in all its parts as a binding contract, good from its date; the agents of the county making these contracts in its name, are held to have been fully empowered to have made them; that contract was an obligation to pay money for land; the land was bound for the purchase money, and the assignment of the debt was an assignment of the security, *pro tanto ;* for the lien which the vendor has, adheres to the note, bond, or bill, which is given for the purchase money, and passes with it wherever it goes, and that, too, in cases where the assignee has no knowledge of the existence of any lien.

In the case before us the vendor has no longer any claim. He has no claim to have the land restored to him, nor has he any lien. He has been paid; paid by the assignee. How inequitable would it not be then to refuse to the assignee the same rights and remedies which the vendor had.

It is said that though these rules as to ratification, apply to some corporations, they do not to others; and that this is a political corporation to which they are not applicable. I deny the proposition. There is no such distinction. Wherever a corporation can contract or be sued, the same rules as to the making and as to the enforcement of contracts, apply.

The case of municipal corporations are numerous in the books. See McClachen v. Alleghany City, 14 Penn. R., 83; Ross v. City of Madison, 1 Carter, 282; Mayor of Ludlow v. Chaulton, 6 Mees & Welby, 815, and note by American editor; also, Randall v. Van Vechten and others; also, Lee v. The Trustees of Flemingborough, 7 Dana, 29, 30; Fox v. Northern Liberties, 3 Watts & Serg., 103; Hayden v. Inhabitants of Madison, 7 Greenleaf, 76; Abbott v. District of Hermann, 7 Greenleaf, 121; Thayer v. The City of Boston, 19 Pick., 511.

Finally, we beg to suggest to the Court that this claim is presented under circumstances of peculiar equity. There is no pretence of fraud in this contract; it was made when every man was well warranted in believing that the Court making it was possessed of the requisite authority; the Court making it so supposed, and were justified by the

plain letter of the statute law in supposing that they had the power; the contracting party so supposed, and relied upon the law which proclaimed the authority of the officer and the safety of the purchaser; the county received the property mentioned in the contract; the officers of that county, duly accredited by law, issued their evidences of indebtedness; these, upon their face were negotiable, and were put in the market for sale, and innocent purchasers invested their money, some of them their all, upon the faith of these public, authentic, accredited acts and securities, and in reliance upon the faith of the county thus solemnly plighted by the contract of the Court, the Act of the Legislature, the acquiescence of the people, and the recognition of the Supervisors.

The opinion of the Court was delivered by Mr. Chief Justice MURRAY. Mr. Justice HEYDENFELDT concurred. Mr. Justice TERRY dissented.

In Burgoyne v. The Supervisors of San Francisco County, 5 Cal. R., we held that the Legislature could not confer other than judicial functions on the Courts of Sessions, and consequently that the attempted purchase of land, in that case, was a nullity, and the county not liable upon the contract.

The plaintiffs in this case have resorted to a different remedy, and by a bill in equity seek to enforce a specific performance of the original contract, on the ground that it has since been ratified by "the supervisors," a body legally competent to act on the subject.

As evidence of a ratification, the plaintiff relies upon certain acts of the supervisors in the care, management and disposition of the property.

It is now contended that the original contract was not void, but only voidable, and therefore the subject of ratification. A distinction is instituted in the books, between that which is void and that which is voidable, the former of which is held to embrace such acts as are against good morals or public policy. Now although, in the abstract, there is nothing which would render a contract like the present obnoxious to either of these objections, still, it cannot be denied that it is competent for the law-making power to establish such rule as it may think proper on the subject; and the Constitution of this State having inhibited such contracts, by declaring that they shall not be made by judicial officers, they necessarily are void; because in contravention to the organic law of the land, established for wholesome and wise purposes.

To contend that a law is unconstitutional and not void, would involve a legal solecism and the paradox of an inferior agent of the Government setting aside the solemn mandates of the Constitution by an act of ratification.

If, then, the original act was void, the ratification was equally void. But conceding, however, that the original contract was not void, but only voidable, I do not think the acts relied on in this case amount to a ratification in fact.

The supervisors, in coming into office, found this property in possession of the county. It was their duty to take care of and preserve it,

and they are not legally bound by such acts. To charge them, it should be shown that they acted with a full knowledge of all the facts. Nay, more; we are satisfied that a deliberative body, like the board of supervisors, cannot be bound by acts *in pais*, but that the best and only *evidence* of its acts and intentions is to be drawn from the record of its proceedings.

This conclusion renders it unnecessary to consider whether the acts of the supervisors can be considered as a new and independent purchase, because not properly evidenced.

In addition to what has already been said, it may be further remarked that, at the time of the sale, there was no person, natural or artificial, *in esse*, capable of taking the grant, and that the same was void, for want of competent parties.

Judgment reversed.

MR. JUSTICE TERRY—I dissent.