[Civ. No. 2120.   Third Appellate District.—March 10, 1920.]

RECLAMATION BOARD, Petitioner, v. JOHN S. CHAMBERS, as Controller, etc., Respondent.

[1] SACRAMENTO AND SAN JOAQUIN DRAINAGE DISTRICT—APPROPRIATION BY LEGISLATURE TOWARD SUTTER BUTTE PROJECT—MAKING OF GIFT—CONSTITUTIONAL LAW.—The act of the legislature, approved May 27, 1919, appropriating a sum of money for the benefit of Sutter Butte by-pass project No. 6 of the Sacramento and San Joaquin drainage district was not in violation of section 31 of article IV of the constitution, which prohibits the legislature from making a gift or lending the credit of the state "to any individual, association, municipal or other corporation whatever," notwithstanding that prior to the making of such appropriation the "reclamation board" had ordered an assessment to be levied and assessed upon the lands within the district to be benefited thereby, and had appointed the assessors therefor.

[2] ID.—DOING OF PUBLIC WORK—MODE OF RAISING MONEY—POWER OF LEGISLATURE TO CHANGE.—The fact that the law in force at the time of the making of the order of assessment contemplated that the moneys necessary to do the public work in question should be raised in a certain manner, to wit, by taxing the land owners within the district, did not deprive the legislature of the power to change such mode of taxation and to provide other or different methods to raise the whole or part of the funds necessary to carry on and complete such work.

[3] ID.—PERFORMANCE OF STATE WORK—DIVISION OF PAYMENT OF COST—DISCRETION OF LEGISLATURE.—The work done by the "reclamation board" in behalf of the Sacramento and San Joaquin drainage district is work carried on by the state, the power to

construct which is vested in the state, and the state, if it elects, may pay all the cost, or place the same upon the lands specially benefited by the work, or it may in its discretion divide the burden between the land owners and the state in such proportions as it may deem equitable, and its determination in this matter is not subject to review by the courts.

[4] ID.—ABSENCE OF LIEN UPON LAND—NO INDEBTEDNESS RELEASED—CONSTITUTIONAL LAW.—The passage by the "reclamation board" of the order for the assessment and the appointment of the assessors did not create a lien upon the lands within the district in any manner whatever; therefore, the act of the legislature, approved May 27, 1918, appropriating a sum of money for the benefit of the Sutter Butte by-pass project No. 6 of the Sacramento and San Joaquin drainage district was not in violation of section 25, subdivision 16, of article IV of the constitution, which declares the legislature shall not pass local or special laws releasing or extinguishing in whole or in part the indebtedness, liability, or obligation of any corporation or person to this state, or to any municipal corporation therein.

APPLICATION for a Writ of Mandate to compel the state controller to draw his warrant in favor of the petitioner. Peremptory writ issued.

The facts are stated in the opinion of the court.

Frank Freeman and Devlin & Devlin for Petitioner.

James L. Atteridge and Wesley E. Marten for Respondent.

NICOL, P. J., *pro tem.*—This is an original application for a writ of mandate to compel the respondent as state controller to draw his warrant in favor of the petitioner for the sum of one hundred dollars, payable out of the appropriation of ten thousand dollars made by the act of the legislature, approved May 27, 1919. (Stats. 1919, p. 1209.)

This act was passed, as expressed in section 1 thereof, for the purpose of co-operation in the construction of the public works included in and provided for by that certain project heretofore adopted by the reclamation board, known as Sutter Butte by-pass project No. 6 of the Sacramento and San Joaquin drainage district. The act appropriates for the benefit of the said district, in connection with the said Sutter Butte by-pass project No. 6, the sum of three million dollars, payable over a term of years, ten thousand dollars, however,

of which appropriation, by the provisions of said act, was to take effect and be available immediately upon said act becoming a law.

The refusal of the respondent to draw his warrant in favor of the petitioner for the amount named in the petition is based on the claim that the money appropriated by this statute is a gift and that the said appropriation of three million dollars is in violation of section 31 of article IV of the constitution, which provides that: "The legislature shall have no power . . . to make any gift, or to authorize the making of any gift, of any public money or thing of value to any individual, association, municipal or other corporation whatever"; and also upon the further claim that the appropriation violates section 25 of article IV of the constitution, which declares that: "The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . 16. Releasing or extinguishing in whole or in part, the indebtedness, liability, or obligation of any corporation or person to this state, or to any municipal corporation therein."

It appears from the petition that the Sacramento and San Joaquin drainage district is a public agency or mandatory created by an act of the legislature of the state of California, approved December 24, 1911 (Stats. 1911 (Extra Sess.), p. 117), as amended and supplemented by the act of May 26, 1913 (Stats. 1913, p. 252), and as further amended and supplemented by the act of June 9, 1915 (Stats. 1915, p. 1338), and as further amended and supplemented by the act of May 27, 1919 (Stats. 1919, p. 1222), which original act of December 24, 1911, as amended and supplemented by the acts hereinbefore mentioned, is known, designated, and referred to as the "Reclamation Board Act," as provided in section 31 of said act so amended and supplemented. That the reclamation board referred to in the petition was created and exists as provided for by said "Reclamation Board Act" and that the management and control of the Sacramento and San Joaquin drainage district is vested in the reclamation board.

It further appears from the petition that the reclamation board, in accordance with the provisions of section 13 of the "Reclamation Board Act," did on the sixth day of November, 1917, adopt and determine upon a certain portion or project of the plans to be carried out by the said board in

the said Sacramento and San Joaquin drainage district, and did designate the same by the name and number of ''Sutter Butte By-Pass Project No. Six,'' and did make and adopt its order and resolution for the levying of an assessment in the sum of $14,993,190 upon the lands embraced within the Sacramento and San Joaquin drainage district, to be benefited thereby, as might be determined in the manner provided by law, and did direct that the said assessment be known and designated as ''Sutter Butte By-Pass Assessment No. Six,'' and did appoint three assessors for the purpose of making said assessment, as provided by the ''Reclamation Board Act.''

The said plans and resolution were amended in sundry particulars and on December 27, 1918, the reclamation board did pass and adopt amended plans and estimates for said ''Sutter Butte By-Pass Assessment No. Six.'' By this amendment the board reduced the amount of said assessment from $14,993,190 to the sum of $10,624,522.25. This assessment was again amended and revised by the board on the eleventh day of August, 1919, when the same was fixed at the sum of $11,995,578.71.

As appears from the foregoing, an assessment had been ordered and assessors duly appointed prior to the passage of the act of May 27, 1919, making the appropriation now in question. Section 15 of the act of June 9, 1915, after providing for the deposit of money collected and the paying out of the same on warrants of the state controller, contains the following provision: ''Drafts of the reclamation board may be presented to the controller and warrants drawn, as aforesaid, against the funds to be raised by an assessment as soon as the Reclamation Board has passed its order or resolution for the levy of such assessment and appointed the assessors therefor.'' (Stats. 1915, p. 1351.)

In view of this provision it is contended by the respondent that inasmuch as the reclamation board had prior to the making of this appropriation, to wit, on December 27, 1918, ordered an assessment of $10,624,522.25, to be levied and assessed upon the lands within the Sacramento and San Joaquin drainage district, to be benefited thereby, and had appointed the assessors therefor, that a liability was thereby imposed upon the land owners, and that this debt and liability had accrued as the debt and liability of the land owners prior to the time at which the legislature made the

appropriation now in question. That this appropriation of three million dollars, made after the debt and liability of the land owners had been thus established in favor of the reclamation board, was a gift, in that it was the voluntary payment by the legislature of the legally accrued debt and liability of these land owners and as such ''a gift of public money'' in violation of the constitution of the state.

[1] With this contention of the respondent we cannot agree. In no manner can we hold that this appropriation is in violation of section 31 of article IV of the constitution, which prohibits the legislature from making a gift or lending the credit of the state ''to any individual, association, municipal or other corporation whatever.'' [2] The work being done by the reclamation board, under the provisions of the act creating the Sacramento and San Joaquin drainage district, is a public work inaugurated by the state of California for a great public purpose, which public purpose is primarily to aid navigation and restore the Sacramento River to its former navigable condition, and also for the purpose of the prevention of disastrous floods, the prevention of the destruction of property and, incidentally, for the reclamation of land.

In speaking of districts of the character of the one here, the supreme court in the case of *People* v. *Sacramento Drain. Dist.*, 155 Cal. 373, [103 Pac. 207], said: ''It is unnecessary to repeat the reasons set forth in the decisions in those cases (cases cited), by which the conclusion there reached was expressed, to the effect that such districts are, in strictness, not corporations at all, but rather governmental agencies to carry out a specific purpose—the agency ceasing with the accomplishment of the purpose. But, additionally, it may be said that the likeness of these agencies to corporations is superficial, and that the similitude—for it is no more than this—ceases, if consideration be paid to the fact that the state could accomplish this very work without organizing a district as such at all, and without giving the land owners within the district any voice in the selection of the managers or trustees. Thus it would be perfectly legal and competent for the legislature, delimiting a tract of land, itself to appoint a commissioner or commissioners to perform all of the functions which, under the existing schemes, are performed by the trustees and the assessors.''

That the Sacramento and San Joaquin drainage district is more closely related to the state than the ordinary drainage district clearly appears from section 7 of the Reclamation Act of 1915, which declares that: "The State of California and the people thereof are hereby declared to have a primary and supreme interest in having erected, maintained and protected on the banks of the Sacramento and San Joaquin rivers and their tributaries and the by-passes and overflow channels and basins mentioned herein, good and sufficient levees and embankments or other works of reclamation, adequately protecting the lands overflowed or subject to overflow by said streams, and confining the waters of said rivers, tributaries, by-passes and overflow channels and basins within their respective channels and boundaries, and it shall be the duty of the reclamation board at all times to enforce on behalf of the State of California and the people thereof the erection, maintenance and protection of such levees, embankments and channel rectification as will, in their judgment, best serve the interests of the State of California. The purposes and objects of this act are to carry into effect the plans of the California debris commission with such modifications and amendments and such additional plans as have been or may hereafter be adopted by the reclamation board for the control of the flood waters of the Sacramento and San Joaquin rivers and their tributaries and said basins, and to vest in said reclamation board control and jurisdiction over said plans."  (Stats. 1915, p. 1340.)

As said by this court in *Argyle Dredging Co.* v. *Chambers*, 40 Cal. App. 332, [181 Pac. 84], "We then have an institution, a state agency, created by the state, under the exclusive control and management of the state, administered by officers appointed by the Governor of the state, and engaged in an enterprise of statewide concern—the act itself providing that 'the state of California and the people thereof are hereby declared to have a primary and supreme interest in its objects and purposes.' "

[3] The passing by the reclamation board of an order of assessment and the appointment of assessors prior to the date of the passage of the act making this appropriation, and the fact that the law in force at that time contemplated that the moneys necessary to do this public work should be raised in a certain manner, to wit, by taxing the land owners, within the district, did not, in our opinion, deprive the legis-

46 Cal. App.—31

lature of the power to change this mode of taxation and to provide other or different methods to raise the whole or part of the funds necessary to carry on and complete such work.

[4] The amount that the state should contribute toward the cost of the work provided by the Sutter Butte By-Pass Assessment No. 6 is a matter solely for the determination of the legislature, and is not subject to review by the courts, and that the legislature in this matter had the power to make this appropriation we entertain no doubt. The power to construct these works is vested in the state, the work is carried on by the state, and all the property acquired by purchase, condemnation, or otherwise is state property, and the method of paying for the same is solely a matter of legislative discretion. The state, if it elects, may pay all the cost, or place the same upon the lands specially benefited by the work, or it may in its discretion divide the burden between the land owners and the state in such proportions as the state may deem equitable. The making of this appropriation was a legislative determination that the amount thereof was the proper sum for the state to bear for the benefits to be received by the state from this work.

That the legislature had the power to pass the act of May 27, 1919, making the appropriation in question, thereby changing in part the policy that was theretofore adopted by the state, as to raising the funds necessary to carry on this work, we think it settled by the case of the *County of Sacramento* v. *Chambers,* 33 Cal. App. 142, [164 Pac. 613], which was a proceeding for a writ of mandate to compel the controller to draw his warrant in favor of the county of Sacramento in payment of a claim arising under the provisions of an act of the legislature of 1915, for the establishment and maintenance of a bureau of tuberculosis under the direction of the state board of health, the act providing that any county establishing a tuberculosis ward or hospital should receive from the state three dollars per week for each person in the active stages of tuberculosis and unable to pay for his support. The respondent refused to draw his warrant in favor of the petitioner, upon the claim that the statute, in so far as it authorized the payment of the sums specified therein to cities, counties, etc., for the purposes stated in the act, was in violation of sections 22 and 31 of article IV and section 13 of article XI of the constitution. His contention was that the maintenance and support and control of county

hospitals constitute duties and burdens which the law casts upon the supervisors and taxpayers of counties, and that the expense necessary to be incurred in supporting such hospitals is a county charge. That the state having by the provisions of the Political Code transferred to counties the duty and burden of maintaining hospitals for the care, support, and treatment of the indigent sick, an appropriation of any money from the state treasury for the purposes mentioned amounted to a gift and was, therefore, in violation of the constitution.

This court sustained the constitutionality of the act, and, as to the legislature having the power to change the policy of the state in reference to county hospitals, said: ''There is no doubt that the legislature by the legislation above referred to, intended to and did transfer from its own shoulders and so placed upon the counties the duty and burden of caring for, supporting, and treating the classes of persons mentioned. But this does not mean that the state has thus forever surrendered all control over those matters or the right itself to exercise full and complete and exclusive jurisdiction and control over hospitals for the indigent sick. . . .

''As before declared, the state may, if it so elects, assume entire control of the matter of caring for and supporting and administering aid to the classes of persons for whose benefit county hospitals are established and maintained. It has the right and power to establish and maintain, under its own exclusive control and management hospitals for such purposes, and so entirely relieve counties of that duty and burden. And, having the right and the power to take upon itself entire responsibility for the support and treatment of all such persons, it has the undoubted right and power to take exclusive or only partial control and assume corresponding liability for the care, treatment, and support of a portion or a certain class of such persons, or those only who are afflicted with a particular kind of malady.''

The respondent also claims, as before stated, that this appropriation violates section 25, subdivision 16, of article IV of the constitution, which declares that: ''The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . 16. Releasing or extinguishing in whole or in part the indebtedness,

liability or obligation of any corporation or person to this state, or to any municipal corporation therein." His contention being that, "the present appropriation attempts to specially release in part the existing liability of a *quasi-*public corporation."

Conceding that this provision of the constitution applies to legal obligations and debts arising from an assessment levied under the Reclamation Board Act, nevertheless, we are of the opinion that the said provision of the constitution has no application to the matter now before us. The passing of the order for the assessment and the appointment of the assessors did not create a lien upon the lands within the district in any manner whatever, and no lien on said lands could be created until the benefits were apportioned upon each tract of land and the land owners had an opportunity after notice given to make objections to the steps taken to fix such lien. At the time this appropriation was made the reclamation board had gone no further than to make the order of assessment declaring the amount to be raised, and appointed three assessors, whose duty it was to define the territory to be charged with the assessment. Section 13 of the Reclamation Board Act provides as to the proceedings to be taken by the assessors, and as to the hearing of objections by the reclamation board, and section 14 of said act provides that after such hearing has been had the assessment list shall be certified by the secretary of the board to be correct and the list shall then be deposited in the office of the county treasurer and "such assessment shall *thereafter constitute a lien* upon the lands so assessed . . . "

[5] In *Argyle Dredging Co.* v. *Chambers,* 40 Cal. App. 332, [181 Pac. 84], this court, in passing upon the constitutionality of the act of the legislature of January 30, 1919 (Stats. 1919, p. 5), held that the legislature had the power to authorize the state board of control to purchase warrants of the Sacramento and San Joaquin drainage district, "issued in payment for the expense of continuing the construction of the east levee of the Sutter By-pass," and that the state by said act, "has simply added another class of securities in which the board of control may invest state funds." These warrants are the legal obligations of the district and will be paid out of assessments, when collected, and when paid, the money goes back into the state treasury

just as it would upon payment of any bonds purchased by the board of control. But there is no lien created upon the land of any land owner until an assessment list has been prepared, a hearing had and the list deposited in the office of the county treasurer, and no legal liability rests upon the land owner until such mode has been followed and completed. It is unnecessary for us to decide whether the legislature has the power to make an appropriation for the purposes mentioned after a lien has attached to the land. But as no lien has yet been created upon the land, it is sufficient to say, under the facts as they exist, that the legislature has full power to change its policy with respect to the method by which the public work being performed for the state, through the officers of the reclamation board, shall be paid.

In no view of the case can we see that the act making this appropriation violates any provision of the constitution. The demurrer interposed by the respondent to the petition is hereby overruled and it is ordered that the peremptory writ of mandate prayed for be issued.

Hart, J., and Burnett, J., concurred.