[Sac. No. 3509. In Bank.—September 25, 1923.]

RECLAMATION DISTRICT No. 1500, Petitioner, v. RAY L. RILEY, as Controller of the State of California, Respondent.

[1] DRAINAGE DISTRICTS — RECLAMATION DISTRICTS — SALE AND PURCHASE OF LEVEES — POWER. — The Sacramento and San Joaquin Drainage District has the power to purchase from Reclamation District No. 1500 levees constructed by the latter forming a part of the flood control project of the Sacramento River.

[2] ID.—APPROVAL OF WARRANTS—POWER OF COURT TO REVIEW.—The supreme court is not bound by the approval of a reclamation dis-

trict of warrants issued by it in payment of portions of the purchase price of levees contracted by it to be sold to a drainage district, there being no disputed question of fact, but the power of the reclamation board to enter into such a contract and to provide for the payment of the levees in the manner in which it did being questioned.

[3] ID.—PAYMENT FOR LEVEES—METHOD—VALIDITY OF STATUTE.—The provisions of the statute (Stats. 1921, p. 472) that if a reclamation district is burdened with an indebtedness represented by bonds or outstanding warrants, compensation for levees purchased in accordance with section 18 of the same act may be made, not by crediting the amount due upon the unpaid assessments, but by actually paying over the money to the reclamation district in the form of warrants issued by the drainage district, is not special legislation contravening the constitution.

[4] CONSTITUTIONAL LAW—CLASSIFICATION FOR LEGISLATION—RULE.— The legislature may classify in order to legislate, and if a class is founded upon some natural intrinsic or constitutional distinction, a law which applies equally to all in that class does not contravene the provisions of the constitution which provide that all general laws shall have uniform operation and prohibit the granting by the legislature of special privileges and immunities.

[5] ID.—REASONS FOR CLASSIFICATION—PRESUMPTIONS.—The mere absence from the face of the statute of reasons which influenced the legislature in its classification of reclamation districts having bonded or outstanding warrant indebtedness does not justify a court in assuming that no valid and appropriate reason did in fact exist.

[6] ID. — RECLAMATION DISTRICTS — CLASSIFICATION BY BONDED AND WARRANT INDEBTEDNESS.—There is no good reason why the classification of reclamation districts having a bonded or outstanding warrant indebtedness into a class by themselves is so palpably unreasonable and arbitrary as to be in contravention of the constitutional provision against special legislation.

[7] ID. — PAYMENT OF PURCHASE PRICE OF LEVEES — METHOD. — The fact that an assessment has been approved by a reclamation district does not deprive the legislature of the power to change the method of payments for works within the district; and where an assessment was approved prior to the taking effect of the amendment of 1921 to the statutes (Stats. 1921, p. 472), but not validated, nor a lien upon the land, until afterwards, said statute may be looked to for authority to make the entire payment of the purchase price of levees sold by a reclamation district directly to the district.

[8] ID.—CONTRACT—PARTIAL PAYMENT.—It is not necessary for a reclamation district board to enter into a definite agreement as to

the total amount to be paid for levees sold by it, including interest, if any, before it can legally draw a draft in part payment of the cost.

APPLICATION for a Writ of Mandate to require the State Controller to issue his warrants as part payment for the purchase price of certain levees constructed by a reclamation district. Writ granted.

The facts are stated in the opinion of the court.

Devlin & Devlin and A. C. and H. L. Huston for Petitioner.

U. S. Webb, Attorney-General, R. T. McKisick, Deputy Attorney-General, and Ralph Smith, for Respondent.

Edward F. Treadwell, *Amicus Curiae.*

LENNON, J.—This is a proceeding in *mandamus* brought by the petitioner, Reclamation District No. 1500, to compel the state controller as *ex-officio* custodian of the funds of the Sacramento and San Joaquin drainage district, to issue and deliver to petitioner his warrants drawn against the funds of said Sacramento and San Joaquin drainage district for the sum of one million dollars as part payment of the purchase price of certain levees originally constructed and owned by said Reclamation District No. 1500. The levees referred to were sold pursuant to the provisions of a contract of sale made and executed between said Reclamation District No. 1500 and said Sacramento and San Joaquin drainage district, wherein the former agreed to sell and the latter agreed to buy said levees.

Reclamation District No. 1500 was created pursuant to the provisions of an act entitled "An act creating a reclamation district to be called and known as 'Reclamation District No. 1500'" (Stats. 1913, p. 130). This statute declares that "It shall be the duty of said reclamation district No. 1500 to construct a levee, forming the south side of Tisdale by-pass, and a portion of the westerly side of the Sutter Basin by-pass. . . . " These by-passes were a part of a comprehensive plan known as the report of the California Debris Commission, adopted by legislative enactment for the flood control of the Sacramento River in its entirety and the reclamation

of lands which had been formerly inundated by the flood
waters of the river. (Stats. 1911, Ex. Sess., p. 117.) As a
governmental agency to carry out the plan of flood control
and reclamation there was created the Sacramento-San
Joaquin drainage district, which embodied within its con-
fines Reclamation District No. 1500 and other reclamation
districts not necessary to be enumerated here. (Stats. 1913,
p. 252.) The management and control of the drainage dis-
trict was vested in the state reclamation board. (Stats. 1913,
p. 252, sec. 5, p. 266.) The statutory plan as adopted con-
templated that the flood waters of the Sacramento River would
be led through certain weirs and by-passes into one main
by-pass, which would ultimately, through the medium of
other and intermediate by-passes, empty into San Francisco
Bay. In order to facilitate the expedient carrying out of
the plan it was provided that the entire work should be di-
vided into separate projects by the state reclamation board,
which should then be constructed as separate units. (Stats.
1913, p. 252, sec. 13, p. 269.) Each project was to be desig-
nated by a number and a name, and the project of which the
levees in controversy are a part is known as the "Sutter-
Butte By-pass Project No. 6."

It was provided by section 18 (Stats. 1913, p. 275; Stats.
1915, p. 1354) that reclamation districts and other agencies
interested in reclamation might construct levees in accord-
ance with the general plan in advance of the general
carrying out of the work, and by section 12 (Stats. 1913,
p. 268; Stats. 1915, p. 1343; Stats. 1921, p. 1481) it was
provided that the works so constructed might be taken over
and purchased by the drainage district in order that the
drainage district might be the owner in fee of all the works
of the general plan. Section 18 as it existed in 1915 pro-
vided that in case the reclamation district or other agencies
should convey a perpetual easement to the drainage district
it should have "a claim against the said drainage district for
the reasonable value or cost of such levees, cuts, canals, etc.,
and an assessment shall be levied upon the lands in said
drainage district benefited thereby so that the same may be
paid, or such cost may be included as one of the items in any
assessment that may be levied in the said drainage district."
(Stats. 1915, p. 1355.) By the same section it was provided
that the works purchased should be conveyed by the recla-
mation district selling them to the drainage district upon

the making of compensation at the actual reasonable cost thereof. It will thus be seen that two alternative methods of payment were provided. The transfer might precede the receiving of compensation for the conveyance of the works by the reclamation district to the drainage district, in which event a claim arose against the drainage district in favor of the reclamation district, or payment might precede the conveyance of the works.

In 1919 section 33 was enacted, which provided that any compensation that should be made to any reclamation district by virtue of section 18 of the Reclamation Board Act should be applied and credited *pro rata* upon the payment of the balance remaining unpaid upon the assessment levied by the state reclamation board against the lands situated in such reclamation district, and that in the event the compensation should exceed the total amounts of such credits the excess should be paid to the district itself. (Stats. 1919, p. 1129.)   This section was amended in 1921 by adding a provision that in the event any reclamation district had warrants outstanding or a bonded indebtedness, or both, the whole of such compensation should be paid by the drainage district directly to the reclamation district. The reclamation district was thereupon to apply such compensation to the payment of the warrants, and after payment of the warrants to the discharge of its bonded indebtedness. (Stats. 1921, p. 472.)   If this method of payment be followed the reclamation district would, of course, remain liable for the payment to the drainage district of the assessment levied by the reclamation board against the lands within the reclamation districts as the installments on such assessment would become due.

The levees in question, which, as before indicated, were a part of the whole general plan of flood control of the Sacramento River, were built and financed by Reclamation District No. 1500. The reclamation board included in the plans, specifications, and estimates of cost of the proposed work to be done under assessment No. 6 of the Sutter-Butte by-pass project items providing for the construction of these same levees. In spreading Sutter-Butte by-pass assessment No. 6, the assessors appointed by the reclamation board charged approximately eighty-eight per cent of the estimated costs of these levees to the reclamation benefits payable exclusively by the owners of land within Reclamation District

No. 1500, and the remaining twelve per cent to flood control benefits, of which seven per cent was payable by the owners of land within Reclamation District No. 1500 and the remaining five per cent payable by owners of land in other reclamation districts located within the boundaries of assessment district No. 6, but, however, wholly exterior to Reclamation District No. 1500. It will thus be seen that the land owners within said reclamation district were assessed for ninety-five per cent of the total cost of the levees.

It was claimed by the land owners exterior to the boundaries of Reclamation District No. 1500 that the duty of constructing the levees was by statute cast wholly upon Reclamation District No. 1500, and consequently that the burden of paying for them should be borne wholly by the owners of lands within the district. The validity of this assessment against the land owners exterior to Reclamation District No. 1500 was directly attacked by the contesting land owners in the action brought in the superior court of Sutter County for the purpose of validating the Sutter-Butte By-pass assessment No. 6 of the Sacramento and San Joaquin Drainage District.

In the meantime, the state reclamation board had entered into an agreement with Reclamation District No. 1500, whereby the Sacramento and San Joaquin drainage district was to take over the levees, the drainage district agreeing to buy said levees for the sum of $2,876,556.55, exclusive of interest thereon, "the amount of interest to be hereafter considered and fixed by the Drainage District." It was stipulated in the said agreement that the drainage district should "pay immediately One million dollars ($1,000,000.00) in warrants against Assessment Number Six of the Sacramento and San Joaquin Drainage District, as a part payment of the above purchase price," to the reclamation district. Pursuant to this agreement, a claim against the drainage district for said sum of one million dollars was prepared, and, having been approved by the reclamation board, was presented to the respondent with a demand that he draw in payment thereof ten warrants for the sum of one hundred thousand dollars each against said assessment No. 6. The demand was refused and Reclamation District No. 1500 brought the present proceedings to compel the issuance of the warrants.

[1]    The decision in the case of the proceeding to validate the assessment No. 6 of the Sacramento and San Joaquin drainage district (66 Cal. Dec. 209) necessarily disposes of the objection presented by the respondent that the drainage district has no power to purchase from Reclamation District No. 1500, the levees forming a part of the flood control project of the Sacramento River. In that proceeding one of the objections presented to the validation of the assessment was that a duty had been cast upon Reclamation District No. 1500 by statute to construct the levees in question and that the owners of land within the district should have borne the entire burden of their cost. The assessment levied by the drainage district included within its total the cost of these levees, and the sustaining of the assessment covering these costs necessarily upheld the validity of the purchase of these levees by the drainage district. The power of the drainage district to purchase the levees having been upheld, the sole question for consideration is whether or not the reclamation board, as governing agency for the drainage district, had the power and authority to provide for the payment of the purchase price of these levees in the particular manner in which it did, that is to say, by the issuance of warrants to the reclamation district covering the total purchase price.

[2]    On behalf of the petitioner it is urged that this court is bound by the approval of the warrants issued in accordance with the terms of said contract by the reclamation board. If this be true, it is, of course, the end of the controversy. But the approval of a claim by the reclamation board does not necessarily preclude and foreclose to this court the consideration of whether or not such a claim should in fact be paid. The only effect of the approval of the reclamation board is a finding as to the facts upon which the claim is based; it does not, and cannot, determine the legality of the claim, if such legality depends not upon a question of fact but upon a question of law. It is not disputed in the case before us but that the drainage district did enter into the contract in question and did attempt by such contract to purchase the levees of the reclamation district. It is disputed, however, that the reclamation board had the power and the jurisdiction to enter into such a contract and to provide for the payment of the levees in the manner in which it did. The determination of this question depends upon the construction and interpretation of the stat-

ute from which the reclamation board derived its power to
enter into the contract, and, therefore, involves the question
of whether or not the reclamation board acted without juris-
diction or in excess of the jurisdiction conferred by the stat-
ute. This is a question of law, and it is, of course, obvious
that the mere fact that the claim was allowed by the reclama-
tion board did not invest it with a validity which it did not
theretofore possess. (*Jacks* v. *Taylor,* 24 Cal. App. 667
[142 Pac. 121]; *Phelan* v. *San Francisco,* 6 Cal. 531; *Santa
Cruz* v. *Broderick,* 113 Cal. 628 [45 Pac. 863]; *Berka* v.
*Woodward,* 125 Cal. 119 [73 Am. St. Rep. 31, 45 L. R. A.
420, 57 Pac. 777].) If it be a fact that the contract was
illegal, it follows as a necessary consequence that the claim
based thereon was also illegal, and the controller was not
bound to issue the warrant to cover such claim. (*Powers*
v. *May,* 114 Cal. 207 [46 Pac. 6]; *Linden* v. *Case,* 46 Cal.
171; *Merriam* v. *Board of Supervisors,* 72 Cal. 517 [14 Pac.
137].) The question of whether or not the reclamation
board was acting without jurisdiction or in excess of juris-
diction cannot be finally settled and determined by the recla-
mation board itself beyond the power of the review of such
determination by this court. In the event that the statute
of 1921 giving the reclamation board the power to pay the
total purchase price for the works directly to the reclamation
district be unconstitutional, or for some good reason not
applicable to the facts of the present case, then the reclama-
tion board is limited to a paying of the excess over the assess-
ment due from the land owners within District No. 1500
upon assessment No. 6, and this excess being considerably less
than one million dollars, the reclamation board would have
no power or authority to issue the warrant for that amount.
If, on the other hand, it be found that the statute is con-
stitutional, and that the reclamation board was entitled to
act in accordance with its provisions, then the approval of
the reclamation board is final as to the amount of compen-
sation due. (*Carmichael* v. *Riley,* 56 Cal. App. 409 [205
Pac. 478].)

The cases cited by the petitioner all involve claims which
were approved by the board of supervisors as to which no
questions of law were raised, but simply questions of fact
as to whether the claimant had or had not performed the
work for which the claim was made. The approval of these
claims was admittedly within the jurisdiction of the board

of supervisors, and the finding of that board that such work had been performed was final, and could not be attacked in the absence of fraud. These cases, however, have no applicability where the claim, as here, is urged that the board was without jurisdiction because the claim in controversy is founded upon a contract which it is claimed is in effect illegal.

[3] Admittedly the reclamation board, in allowing the claim in controversy, was acting under and in pursuance of the provisions of section 33, as amended in 1921. (Stats. 1921, p. 472.) Section 33 as it existed in 1919 provided that in making compensation for levees purchased from reclamation districts the reclamation board should apply the purchase price of the levees upon the balance remaining unpaid by the owners within the reclamation district upon the assessments levied by the drainage district and that only the excess should be paid by the drainage district directly to the reclamation district. (Stats. 1919, p. 1129.) In other words, by section 33 it was provided, in effect, that for the taking over by the drainage district of works previously constructed by a reclamation district compensation therefor should be made by offsetting the amount found to be due against the assessments theretofore levied by the drainage district upon the lands within the reclamation district, and that the excess only of such compensation over and above the aggregate amount of the assessments should be paid over to the reclamation district by the drainage district.

The amendment of 1921 (Stats. 1921, p. 472) re-enacted the provisions of section 33 as it existed in 1919 and then added the proviso that if a reclamation district was burdened with an indebtedness represented by bonds or outstanding warrants, compensation for levees purchased in accordance with the provisions of section 18 of the same act might be made, not by crediting the amount due upon the unpaid assessments, but by actually paying over the money to the reclamation district in the form of warrants issued by the drainage district.

It is argued on behalf of respondent that this provision for this method of payment is special legislation, inasmuch as it attempts to grant an immunity or privilege, through an wholly unreasonable classification, and in this connection it is contended that by permitting the payment directly to the districts having a bonded indebtedness, or an indebtedness

represented by warrants, and not permitting similar payments to be made to other reclamation districts, having other forms of indebtedness, the former districts are granted the privilege to the exclusion of other reclamation districts of extension of time for payment of assessments.

[4] It is, of course, well established that the legislature may classify in order to legislate, and that if a class is founded upon some natural, intrinsic, or constitutional distinction, a law which applied equally to all in that class does not contravene the provisions of the constitution which provide that all general laws shall have uniform operation and prohibit the granting by the legislature of special privileges and immunities.

It was said in *Application of Miller,* 162 Cal. 687, 696 [124 Pac. 427, 429], "the power of the court to declare a statute unconstitutional is 'conceded to be always one of the utmost delicacy in its exercise, and never to be exerted except when the conflict between the statute and the constitution is palpable and incapable of reconciliation.' " (*Stockton* v. *Stockton,* 41 Cal. 159.) The principle thus enunciated has become the basis of the well-established rule that unless the statute in controversy is plainly and palpably subversive of the constitutional inhibitions, it will be assumed by the courts that the legislative discretion has been reasonably and properly exercised. (*In re Spencer,* 149 Cal. 396, 400 [117 Am. St. Rep. 137, 9 Ann. Cas. 1105, 86 Pac. 896]; *In re King,* 157 Cal. 161, 164 [106 Pac. 578].) And, furthermore, although the reason actuating the legislature in creating the class may not appear from a reading of the law, it will be assumed by the court that reasons, good and sufficient, did exist until the contrary is shown. (Cooley on Constitutional Limitations, 7th ed., p. 228.) In short, it must clearly appear, before the courts will intervene, that there was no sufficient reason warranting the legislature in making the classification. (*In re King, supra; Grumbach* v. *Lelande,* 154 Cal. 679 [98 Pac. 1059].)

[5] The reasons which influenced the legislature in its classification of reclamation districts having bonded or outstanding warrant indebtedness are not disclosed on the face of the statute, but the mere absence of such disclosure will not justify this court in assuming that no valid and appropriate reasons did in fact exist for the classification complained of. (*Arkansas Natural Gas Co.* v. *Arkansas Rail-*

*road Com. et al.*, 261 U. S. 379 [67 L. Ed. 705, 43 Sup. Ct.
Rep. 387].) **[6]** Moreover, we know of no good reason
why it may not be safely said that those reclamation dis-
tricts having a bonded or outstanding warrant indebtedness
are in a class by themselves. And we are not prepared to
say that the grouping of reclamation districts having
bonded and outstanding warrant indebtedness into a class
by themselves is so palpably unreasonable and arbitrary as
to be in contravention of the constitutional provisions. It
must, therefore, be held that the legislature in enacting the
statute was acting within its constitutional powers.

**[7]** It is also urged that the reclamation board cannot
look to section 33 of the statutes of 1921 for authority to
make the payment of the entire purchase price directly to the
district, because of the fact that the assessment was ap-
proved by the reclamation board on March 25, 1921, and the
statute did not take effect until July 29, 1921. The assess-
ment had been approved prior to the enactment of the
statute, but it was not validated, nor did it become a lien
upon the land, until the judgment of the statutory court
validating the assessment was rendered in April, 1922, some
little time after the enactment of the statute. It was held
in *Reclamation Board* v. *Chambers*, 46 Cal. App. 476 [189
Pac. 479], that even after the assessment had been started
the legislature could change the method of raising money.
In that case it was said: "The fact that the law in force at
that time contemplated that the moneys necessary to do this
public work should be raised in a certain manner, to wit, by
taxing the land owners within the district, did not, in our
opinion, deprive the legislature of the power to change this
mode of taxation and to provide other or different methods
to raise the whole or part of the funds necessary to carry
on and complete such work." So we do not see any reason
why the fact that the assessment had been approved should
deprive the legislature of power to change the method of
payment for the works within the reclamation district.

**[8]** With reference to the final objection made on behalf
of respondent, we cannot see any good reason why it was
necessary for the reclamation board to enter into a definite
agreement as to the total amount to be paid for the levees
in question, including interest, if any, before it could legally
draw a draft in part payment of the cost. Whether or not

the drainage district will be required to pay interest on the warrants and bonds issued by the reclamation district to pay for the cost of construction or will be required only to pay for the cost of the material and the cost of labor to build the levees will depend upon the construction given the provisions of the statute which provide that the drainage district may acquire the works upon the payment as compensation of the "actual reasonable cost thereof." It is a matter which can be definitely determined at a time in the future. This present claim is for a part payment on the principal, and the question of whether interest should be paid can well be disposed of when a warrant is drawn or refused to be drawn for the payment thereof.

The reclamation board having the power and authority to enter into a contract for the purchase and sale of the levees in question, and having the power and authority to provide for the payment in the manner in which it did, this claim, based as it is upon such contract, and having been properly allowed and approved by said reclamation board, is a legal claim against assessment No. 6, and should be paid.

Let the writ of mandate issue.

Seawell, J., Lawlor, J., Wilbur, C. J., Waste, J., Myers, J., and Kerrigan, J., concurred.