## SCHAFER v. M. L. RITCHIE, JUDGE OF THE DISTRICT COURT IN AND FOR THE COUNTY OF SALT LAKE.

No. 2961.   Decided Dec. 21, 1916 (162 Pac. 618).

1. DIVORCE—ACTION AGAINST NON-RESIDENT DEFENDANT—JURISDICTION. The courts of Utah have jurisdiction of an action for divorce against a non-resident defendant, by publication of summons or other constructive service, although the marriage was not solemnized within the state and no matrimonial domicile has been had therein. (Page 113.)

2. DIVORCE—STATUTE—CONSTRUCTION. Comp. Laws 1907, Section 1208, authorizing divorce for permanent insanity of defendant, requires, among other things, that the complaint be duly served upon the defendant in person, and provides that the defendant may be brought into court upon the trial or be examined by physicians to determine his mental condition, and requires the county attorney to make an investigation into the merits of the case. Section 2950, relating to service of summons by publication, makes personal service of summons and complaint out of the state the equivalent to publication and deposit in the post office. *Held*, that when a divorce is sought upon the ground of permanent insanity, to confer jurisdiction, it is essential that the defendant be personally served within the territorial jurisdiction of the court's process. (Page 114.)

3. DIVORCE—STATUTE—CONSTRUCTION. In Comp. Laws 1907, Section 1208, authorizing a decree of divorce upon the ground of permanent insanity, and providing, among other things, that either party shall be entitled to have the defendant brought into court upon the trial or to have an examination by competent physicians to determine the defendant's mental condition, and for such purpose either party may have process from the court to enter any asylum or institution within the state where such defendant may be confined, the clause, "where such defendant may be confined," modifies the words "asylum or institution," and not "the state," and hence means that either party may have process to enter such institution where the defendant may be confined within the state, and does not refer to a non-resident defendant. (Page 117.)

Mandamus by Charles H. Schafer against M. L. Ritchie, Judge of the District Court in and for the County of Salt Lake.

WRIT DENIED.

*Hancock & Barnes* for plaintiff.

*C. M. Beck* and *H. L. Mulliner* for defendant.

STRAUP, C. J.

The plaintiff, Charles H. Schafer, in the district court of Salt Lake County, brought an action against his wife, Pauline L. Schafer, for divorce on the ground of permanent insanity of the wife. In the complaint it is alleged that the plaintiff, for more than a year next preceding the commencement of the action, had been an actual and bona fide resident of Salt Lake County; that the parties were married in June, 1887, in Wabash County, Ill.; that his wife, in May, 1906, by the probate court of Lucas County, in the State of Ohio, was adjudged insane and was confined in the Toledo State Mental Hospital at Toledo, Ohio, more than nine years prior to the commencement of plaintiff's action; and that the insanity of his wife for many years last past has been and is incurable and permanent. Other matters also are alleged with respect to the plaintiff's ability and readiness to continue to support and maintain the defendant, and other matters not material to this inquiry. The plaintiff caused a guardian ad litem to be appointed to represent his wife, and served a copy of the summons and of the complaint upon such guardian and upon the county attorney of Salt Lake County. He also filed the usual affidavit, showing that his wife was a non-resident of the State of Utah, and resided at Toledo, in the County of Lucas, State of Ohio, and was there confined in the Toledo State Mental Hospital, and obtained an order for a publication of the summons. He thereupon caused a copy of the summons and of the complaint to be personally served upon his wife at the hospital by the sheriff of Lucas County, who made due return of such service. The plaintiff, in the course of the proceedings, thereafter applied to the district court for a commission to take the depositions of the super-intendent and assistant superintendent of the Toledo State Mental Hospital, and of other physicians and witnesses, to support the allegations of his complaint that his wife, as alleged therein, had been duly and regularly adjudged in-

sane, and that her insanity was incurable and permanent. Upon objections of the county attorney and of the guardian, the court refused to grant the commission, upon the ground that the court had not jurisdiction of the cause. Thus application is made to us for a writ of mandate to direct the district court to order the commission.

The lower court held that it had no jurisdiction for two reasons: (1) Because in the complaint for the divorce it is alleged that the marriage was solemnized without the state, and that the defendant was a non-resident of the state, and because it is not averred that the parties at any time lived together, or that the wife at any time resided within the state, and because it is shown that she was not personally served with a copy of the summons and of the complaint within the state, but in the State of Ohio, and that no personal appearance had been entered by her; and (2) that under the special provisions of the statute of this state, making permanent insanity of the defendant a ground for divorce, to maintain an action and to obtain a decree upon such ground, the defendant, at the time the action is commenced, or when tried, must be within the state, and there personally served with a copy of the summons and of the complaint. That is, on the first stated ground it is claimed that a plaintiff is not entitled to maintain an action for divorce on any of the statutory grounds, though he or she was an actual and bona fide resident of the state for the period fixed by the statute, one year, if there was no matrimonial domicile, nor the defendant personally served with process, within the state, and no appearance by him or her entered in the cause. In other words, that the courts of this state are without jurisdiction to entertain an action for divorce as against a non-resident defendant by publication of summons or other constructive service, when the marriage was not solemnized within the state, nor no matrimonial domicile had therein. We think the weight of authority is against such a holding. In 9 R. C. L. 399, it is said:

"It is well settled in this country that every state has the right to determine the marital status of the persons bona fide domiciled within its limits, and the courts may acquire, under statutory

sanction, jurisdiction to dissolve the marriage relation of such persons irrespective of where the marriage was celebrated, or of where the cause of divorce arose, or of where the domicile of the defendant may be; and this is true though the parties never cohabited together as husband and wife within the state. If the plaintiff is a bona fide resident of the state of the forum, it is generally recognized that the courts of that state may acquire jurisdiction to decree a divorce in his or her favor, irrespective of the domicile or residence of the defendant; and such decree will be valid in the state of the forum to dissolve the marriage relation, irrespective of what effect may be given to it in other states."

In 14 Cyc. 588, the rule is thus stated:

"The residence of plaintiff and not that of defendant gives jurisdiction in divorce cases; and by the weight of authority the courts may entertain a divorce suit by a resident against a nonresident, although the service or process is constructive or is made outside of the state and defendant does not appear."

In notes to the case of *Succession of Benton*, 59 L. R. A. 165, the annotator says:

"Even when the defendant is a nonresident, is served constructively only, and does not appear, the validity of the divorce within the state where rendered, if authorized by the statutes of that state, seems to be generally conceded, even by those courts which hold that a decree rendered under such circumstances has no extraterritorial effect."

The same rule is announced in *Gibbs* v. *Gibbs*, 26 Utah 382, 73 Pac. 641. Nothing is decided by us in *State* v. *Morse*, 31 Utah 213, 87 Pac. 705, 7 L. R. A. (N. S.) 1127, which makes against this.

We now come to the second ground. The statute re-          **2**
lating to divorce (C. L. 1907, section 1208) provides
that:

"* * * The court may decree a dissolution of the marriage contract between the plaintiff and defendant in all cases where the plaintiff, for one year next prior to the commencement of the action, shall have been an actual and bona fide resident of the county within the jurisdiction of the court, for any of the following causes, to wit:

"8. Permanent insanity of defendant: Provided, that no

divorce shall be granted on the grounds of insanity, unless, first, the defendant shall have been duly and regularly adjudged to be insane by the legally constituted authorities of this state, or some other state, at least five years prior to the commencement of the action; second, unless it shall appear to the satisfaction of the court, by the testimony of competent witnesses, that the insanity of the defendant is incurable. In all such actions, the court shall appoint for the defendant a guardian ad litem, who shall take such measures as may be necessary and proper to protect the interests of the defendant; and a copy of the summons and complaint must be duly served on the defendant in person, on his guardian ad litem, and on the county attorney for the county in which such action is prosecuted; it shall be the duty of such county attorney to make an investigation into the merits of the case, and to attend the court upon the trial of said cause, and make such defense therein as may be just and proper to protect the rights of the defendant, and the interests of the state. In all such actions the court and judge thereof shall have all the powers relative to the payment of alimony, the distribution of property, and the custody and maintenance of minor children, which such courts now have or may hereafter possess, in other actions for divorce. Either the plaintiff or defendant, or legal representatives, shall, upon proper notice, be entitled to have the defendant brought into court upon the trial or to have an examinaiton of the defendant by two or more competent physicians, to determine the mental condition of the defendant, and for such purpose either party may, upon application, have process from the court to enter any asylum or institution within the state where such defendant may be confined. The costs of court in such action shall be assessed or apportioned by the court according to the equities of the case, as may be just and proper.''

The proviso relates only to the eighth ground, that of ''permanent insanity of the defendant.'' Under our general statute (C. L. 1907, Section 2950), providing for service of summons by publication, it is provided:

''In case of publication, where the residence of a nonresident or absent defendant is known, the clerk must forth-

with deposit a copy of the summons and complaint in the post office, directed to the person to be served at his place of residence. When publication is ordered, personal service of a copy of the summons and complaint out of the state is equivalent to publication and deposit in the post office.''

Here an affidavit was made showing that the defendant was a nonresident, and that she resided at Toledo, Ohio, and an order obtained to publish the summons. But, in lieu of the publication and of mailing, a copy of the summons and of the complaint were, by the sheriff of Lucas County, there personally served on the defendant. This, the plaintiff contends, was in compliance with the divorce statute (Section 1208), requiring a copy of the summons and of the complaint to be ''duly served on the defendant in person.'' We do not think so. The service of the copy of the summons and of the complaint, under section 1208, means, we think, a personal service within the territorial jurisdiction of the court's process, and not a personal service on a defendant anywhere in the world where he or she may reside or be found. The service referred to in section 2950, but relates to a constructive service, the personal service out of the state being there but equivalent to a publication of the summons and a mailing thereof and of a copy of the complaint. That is, whether the summons, when publication is ordered, be published and a copy thereof and of the complaint mailed, or, in lieu thereof, be outside of the state personally served on the defendant, is, in either event, but a constructive, and not what is known as a ''personal'' service, and is not such a service as to confer personal jurisdiction. To contend otherwise is to contend that process of the court has extraterritorial effect. We, therefore, think when a divorce is sought upon the ground of permanent insanity, to confer jurisdiction, it is essential that the defendant be personally served within the territorial jurisdiction of the court's process. This view, as we think, is supported by other language of section 1208, especially the provision that the defendant may be ''brought into court upon the trial,'' or be examined by physicians to determine his or her mental condition, and the provision

requiring "the county attorney * * * to make an investigation into the merits of the case," etc.

The plaintiff, however, points to the latter part of section 1208, giving either party process to enter "any asylum or institution within the state where such defendant may be confined," as indicating that the statute refers to a nonresident defendant as well as to a resident defendant of the state. We think the clause "where such defendant may be confined" modifies the words, "asylum or institution," and not "the state." Giving it that effect, it means that either party may have process to enter any asylum or institution where the defendant may be confined within the state. To give it the meaning contended for by the plaintiff means that the court's process would give the right to enter any asylum or institution within any state where the defendant may be found, thereby giving process of the court extraterritorial effect, which the Legislature could not do and ought to be assumed it did not intend.

We thus think the court correctly ruled that he had no jurisdiction of the cause, and hence properly denied the application for a commission to take the depositions. The writ of mandamus is therefore denied at plaintiff's costs.

FRICK and McCARTY, JJ., concur.