[S. F. No. 14077.  In Bank.—April 2, 1931.]

HARRY WATSON, Petitioner, v. DIVISION OF MOTOR VEHICLES OF THE STATE OF CALIFORNIA et al., Respondents.

Walter J. Little and Kenneth W. Kearney for Petitioner.

U. S. Webb, Attorney-General, and Charles A. Wetmore, Deputy Attorney-General, for Respondents.

Howard Thomas Mitchell, *Amicus Curiae* on Behalf of Petitioner.

Ivan Kelso, J. Allen Davis, George E. Sanford, Percy V. Long and Edgar C. Levey, *Amici Curiae* on Behalf of Respondent.

WASTE, C. J.—Petitioner seeks by this proceeding in *mandamus* to compel the Division of Motor Vehicles to issue to him a license to operate motor vehicles in the state of California or to revoke an order suspending the effect of a license theretofore possessed by him. On December 5, 1929, petitioner, who then held a license to operate motor vehicles in this state, suffered a judgment in excess of one hundred dollars to be obtained against him in the municipal court of the city of Los Angeles for damages on account of personal injuries and injury to property occasioned as a result of his operation of a motor vehicle. The judgment has not been paid, and remains wholly unsatisfied. Pursuant to the provisions of section 73g of the California Vehicle Act (Stats. 1929, p. 561), petitioner's license was suspended fifteen days subsequent to the time the judgment became final. That section provides, in part, that "The operator's or chauffeur's license and all of the registration certificates, of any person, in the event of his failure to satisfy every judgment within fifteen days from the time it shall have become final . . . for damages on account of personal injury, or damages to property in excess of one hundred dollars, resulting from the ownership or operation of a motor vehicle by him, his agent, or any other person with the express or implied consent of the owner, shall be forthwith suspended by the chief of the division of motor vehicles, upon receiving a certified copy of such final judgment or judgments from the court in which the same are rendered and shall remain so suspended and shall not be renewed nor shall any other motor vehicle be thereafter registered in his name while any such judgment remains unsatisfied and subsisting and until the said person gives proof of his ability to respond in damages, as defined in section 36½ of this act, for future accidents. . . . "

Petitioner admits that he has not paid the judgment, but contends that the order suspending his license should be revoked for two reasons: First, because section 73g, *supra*, is unconstitutional and void, for the reason that it is discriminatory legislation and not based on a reasonable classification; second, because even if the act be declared to be constitutional, it has no application to him for the reason that the accident upon which the judgment is based occurred before the passage of the act. In reference to the first point we are of the opinion that the act is constitutional. Petitioner relies on *Matter of Lindley*, 108 Cal. App. 258 [291 Pac. 638], where, upon application for and the issuance of a writ of *habeas corpus* following petitioner's arrest for operating a motor vehicle without a license, his license having been theretofore suspended under the provisions of section 73g, *supra*, the District Court of Appeal held the section to be unconstitutional on the ground that, under its terms, a person's license to operate a motor vehicle was made dependent upon his ability to pay and discharge judgments rather than upon his ability to operate such vehicle. The decision in that case declares such a classification to be unnatural and discriminatory for the reason that persons having the ability and inclination to pay judgments rendered against them for the negligent operation of their motor vehicles are permitted to continue their operation of the same, no matter how negligent they might be, while less fortunate persons who are willing but unable to pay and discharge such judgments are deprived of their license and privilege to operate such vehicles. In the concurring opinion in the Lindley case it is said that "a rich man, continually operating his car in a negligent manner and solely for pleasure, may offend again and again, may day by day rove the roads at an unlawful rate of speed, free from molestation even if successive judgments for damages be pronounced against him, while the poor man is deprived of the use of his car if he fails to pay a single judgment, even though he be ordinarily a careful driver, being thereby often deprived of his means of livelihood".

We do not believe that section 73g, *supra*, is unconstitutional for the reasons advanced in the Lindley decision.

■ The legislative power to regulate travel over the highways and thoroughfares of the state for the general welfare is extensive. It may be exercised in any reasonable manner to conserve the safety of travelers and pedestrians. Since motor vehicles are instruments of potential danger, their registration and the licensing of their operators have been required almost from their first appearance. The right to operate them in public places is not a natural and unrestrained right, but a privilege subject to reasonable regulation, under the police power, in the interest of the public safety and welfare. (*Hendrick* v. *Maryland,* 235 U. S. 610, 622 [59 L. Ed. 385, 35 Sup. Ct. Rep. 140].)

■ The power to license imports the further power to withhold or to revoke such license upon noncompliance with prescribed conditions. In our opinion, the revocation of the privilege for nonpayment of judgments arising from negligent operation of motor vehicles is a reasonable regulation, and one which may well tend to eliminate from the highways persons shown to be dangerous to life and property. There is nothing arbitrary or unreasonable in such a requirement.

The members of the Massachusetts Supreme Court affirmatively answered a query propounded by the legislature of that state as to whether it might "constitutionally enact legislation depriving a person of a license to operate motor vehicles until he has satisfied a prior judgment against him in an action for damages or death resulting from the operation by him or any other person of a motor vehicle". While the opinion of the justices (251 Mass. 617 [147 N. E. 680]) was merely advisory, and not given nor intended to be binding as a judicial determination of the question propounded, we are in complete accord with the reasons advanced in support of the constitutionality of such a statute. Among other things, the justices stated: "The manifest purpose of the proposed act . . . is to protect the public against injuries upon public highways. The power of the commonwealth over public ways is very broad. We think that the legislature may declare that no person shall have a license to operate a motor vehicle upon public ways until he has satisfied any outstanding judgment against him founded on previous operation of a motor vehicle. A stat-

ute of that nature may have a tendency to prevent conduct by a licensee capable of being the basis of such a judgment, and thus promote the public safety. It would have a tendency to keep off the highway those shown by their conduct to be dangerous to other travelers. It may be thought by the legislature that such a judgment debtor, who did not do what the law required of him, as declared by the judgment, to repair damage already done by him, was not a fit person to be intrusted again with the responsibility of operating a motor vehicle on the public ways. From the viewpoint of the common good and general welfare the proposed statute cannot be pronounced obnoxious to the Constitution. . . .

██ ''There is no inequality or discrimination in a constitutional sense from the standpoint of the judgment debtor. Those who do not pay their debts arising from their fault in the operation of a motor vehicle on the public way may be classified by the legislature as not worthy of a license to operate again. . . . ''

Nor do we think section 73g, *supra,* favors the rich over the poor and is, for that reason, discriminatory. The fallacy in this argument lies in the failure to distinguish between equality of opportunity and ability to take advantage of the opportunity which is offered to all. ██ The equality of the Constitution is the equality of right, and not of enjoyment. A law that confers equal rights on all citizens of the state, or subjects them to equal burdens, is an equal law. (*State* v. *Griffin,* 69 N. H. 1 [76 Am. St. Rep. 139, 41 L. R. A. 177, 39 Atl. 260, 264].) So long as the statute does not permit one to exercise the privilege while refusing it to another of like qualifications, under like conditions and circumstances, it is unobjectionable upon this ground. A New York statute, requiring those engaged in the business of carrying passengers for hire in motor vehicles to file a policy of insurance or a surety or personal bond conditioned for the payment of any judgment recovered against the operator of the motor vehicle, was held to be constitutional (*Packard* v. *Banton,* 264 U. S. 140 [68 L. Ed. 596, 44 Sup. Ct. Rep. 257]), even though the same argument might be made against it as petitioner urges against section 73g, *supra,* for it is entirely conceivable that a poor taxi driver

could not afford the expensive insurance, or would be unable to furnish the necessary bond, while the thriving taxicab corporation, with ample capital at its disposal, could secure the required guarantees and operate regardless of the negligence of its drivers.

■ Petitioner also asserts the section is unconstitutional because its application is restricted solely to motor vehicles. Such vehicles have been recognized as properly and reasonably forming a separate class, for legislative purposes, and accordingly a statute is not unconstitutional, as being special legislation, merely because it legislates solely upon the operation of automobiles, and does not attempt to regulate the operation of all vehicles using the public highways. In this connection see the authorities collated in 2 R. C. L. 1171.

■ The statute provides for the suspension of a person's registration certificate and operator's license in the event of his failure, within fifteen days after finality, to discharge every judgment "for damages on account of personal injury, or damages to property in excess of one hundred dollars". While the protection of property is all important, the safety of life and limb is paramount, and, therefore, the legislature in the exercise of the police power might well provide for the suspension of an operator's license upon his failure to pay *any* judgment, no matter how small, for damages for personal injuries, while reserving the right to suspend such license for failure to discharge judgments for damages to property only when such judgments are in excess of one hundred dollars. Such a distinction is reasonable and does not affect the validity of the law. The consequences of an injury to property are never as serious as those flowing from an injury to the person, and the legislature very properly made the law less stringent as regards the former. This being so, we find nothing inherently or constitutionally wrong with the legislative conclusion that an operator's license should be suspended for failure to discharge a judgment for property damage only when the same is in excess of one hundred dollars. Such a limitation is reasonable under the circumstances, and in a large measure prevents the statute from being overburdensome. The courts have nothing to do with the wisdom,

policy, or expediency of the law, for the power to make the law carries with it the power to judge of its necessity, expediency, and justice, and, primarily at least, of the reasonableness of the means and methods used to accomplish the end sought to be obtained.

Many other states, among them New York, Maine, Connecticut, Rhode Island and New Jersey, have recently adopted statutes similar to our section 73g. Our research has failed to uncover any decision passing directly on these statutes. The New York statute, which is practically identical with ours, is found in the Laws of 1929, chapter 54, article VIa, sections 94 to 94 (1), and in Cahill's Consolidated Laws of New York, 1930, page 2586, section 94b. Because of the ever increasing number of automobile accidents, the tendency, in recent years, has been toward such legislation. The constitutionality of compulsory liability insurance has been recognized for several years (*State ex rel. Stephenson* v. *Dillon,* 82 Fla. 276 [22 A. L. R. 230, 89 South. 558]; *Opinion of the Justices,* 81 N. H. 566 [39 A. L. R. 1023, 129 Atl. 117]; *Opinion of the Justices,* 251 Mass. 569 [147 N. E. 681]; 2 Berry on Automobiles, 6th ed., p. 1592), and we can perceive of no .good reason why, in the interest of public safety and in its regulation of public highways, a legislature may not constitutionally enact a financial responsibility statute such as section 73g.

It should be here noted that section 73g, *supra,* in addition to providing that the operator of a motor vehicle who permits a judgment based on his negligence in the operation of a motor vehicle to remain unsatisfied for a period of fifteen days, shall have his license suspended, likewise imposes the same penalty on a principal whose agent negligently operates a motor vehicle, and who, when sued, and a judgment is recovered against the principal, permits it to remain unsatisfied for a period of fifteen days. The constitutionality of section 73g in so far as it applies to such principals is not involved on this appeal, petitioner herein being the operator of the car, and the person upon whose negligence the judgment is based. We specifically leave open the question of the constitutionality of the section in so far as it applies to such principals.

The second contention made by petitioner is sound. The accident out of which this judgment arose occurred on

March 7, 1929. The effective date of section 73g was August 14, 1929. Judgment was entered December 5, 1929. Respondent calls attention to the fact that the act specifically provides that the license is to be revoked for nonpayment of the judgment, and contends, that inasmuch as the judgment herein was entered after the act went into effect, it is immaterial when the accident occurred. In other words, it is contended on behalf of respondent that as long as the judgment is entered after the effective date of the statute, the act applies regardless of the date of the accident, and it is contended such application of the statute is prospective and not retrospective. In this we cannot agree. It has already been held that the act is constitutional for the reason that it is a reasonable exercise of the police power in that it tends to keep negligent drivers off the highway. The penalty imposed—suspension of license—is imposed because of negligent driving. If the penalty were imposed simply for failure to pay a judgment, and had no relation to negligent operation of motor vehicles, it would be unconstitutional. It follows that since the judgment was predicated on an act of negligence committed before the act went into effect, and since the act adds a new penalty for that negligence, under well-settled principles, the act can have no application to acts of negligence committed before its passage. Any other interpretation would violate the well settled rule in reference to the prospective operation of such statutes.

This view is in accord with the recent decisions of this court in interpreting other provisions of the automobile law passed by the 1929 legislature. See *Krause* v. *Rarity*, 210 Cal. 644 [293 Pac. 62]; *Callet* v. *Alioto*, 210 Cal. 65 [290 Pac. 438].

Let the writ of *mandamus* issue as prayed for.

Preston, J., Langdon, J., and Seawell, J., concurred.

RICHARDS, J., and CURTIS, J., Concurring.—We concur in the conclusion of the main opinion herein, directing the issuance of a writ of mandate, but we do so upon the sole ground that the accident out of which the judgment referred to therein arose, having occurred several months prior to the taking effect of section 73 (g) of the California Vehicle

Act (Stats. 1929, p. 561), such judgment, though entered subsequent to the taking effect of said amendment, cannot be given effect in seeking to impose the penalty provided in said amendment, for the reason that since the judgment was predicated on an act of negligence committed before the act went into effect, and since the act adds a new penalty for that negligence, said act can have no application to acts of negligence committed before its passage. (*Krause* v. *Rarity*, 210 Cal. 644 [293 Pac. 62]; *Callet* v. *Alioto*, 210 Cal. 65 [290 Pac. 438].) The foregoing conclusion stands upon the threshold of this proceeding and prevents this court from entering upon any consideration of the constitutionality of a statute which has concededly no application to the proceeding before us. It is well settled law that the courts will not give their consideration to questions as to the constitutionality of a statute unless such consideration is necessary to the determination of a real and vital controversy between the litigants in the particular case. Whatever, therefore, has been said in the main opinion with relation to the constitutionality of said amendment to the California Vehicle Act is purely *obiter dictum* and commits the court to the decision of a question which is not before it in the instant case. Upon the constitutionality of said act we therefore decline to express an opinion.

Shenk, J., concurred in the judgment.