[Civ. No. 13770.  Second Dist., Div. One.  Oct. 28, 1942.]

JOHN SAMSON, Appellant, v. STATE OF CALIFORNIA et al., Respondents.

C. V. Eberhard, Elisabeth M. Eberhard and Ray C. Eberhard for Appellant.

Earl Warren, Attorney General, and L. G. Campbell, Deputy Attorney General, for Respondents.

DRAPEAU, J. pro tem.—By his amended complaint the plaintiff alleges that the defendant, the State of California, and its officers in the Department of Motor Vehicles, have demanded the surrender of his driver's license, and the license plates for his automobile, because of his failure to pay a judgment against him for damages caused by his negligent operation of said automobile; that he was insured against this casualty in a Nevada corporation, which has failed to pay the judgment, and which is now in receivership; that when the state officers demanded the surrender of his license and of his plates, he filed with the Department of Motor Vehicles an affidavit setting forth that he was insured by said corporation; that notwithstanding this the department still insists on the surrender of his license plates and threatens to proceed against him in the criminal courts if he does not do so. The prayer of the complaint is for injunctive relief.

Demurrer was sustained without leave to amend, with judgment for the defendant, from which plaintiff has appealed.

The only question involved is whether plaintiff by his complaint brings himself within the provisions of section 411.5 of the Vehicle Code, and particularly within that portion of the section reading as follows:

"If the department is satisfied from such papers that such insurer was authorized to issue such policy of insurance in the State of California at the time of issuing such policy and that such insurer is liable to pay such judgment, at least to the extent and for the amounts hereinbefore provided in this chapter, the department shall not suspend such license

or licenses and such certificate or certificates, or if already suspended, shall reinstate them." (§ 411.5, Motor Vehicle Code, as amended Stats. 1939, p. 2321.)

The Insurance Code provides that "A person shall not transact any class of insurance business in this State without first being admitted for such class. Such admission is secured by procuring a certificate of authority from the commissioner. Such certificate shall not be granted until the applicant conforms to the requirements of this code and of the laws of this State prerequisite to its issue." (Ins. Code, § 700.) Insurance companies organized in other states are permitted to transact business in California upon complying with the requirements of the Insurance Code, designed to secure an examination by the Insurance Commissioner to determine, among other things, the solvency of such organizations.

The complaint in this case does not allege that the plaintiff's insurance company had been authorized to transact business in this state. The demurrer was therefore well taken unless some legal exception can be found which will permit plaintiff to keep his operator's license and number plates.

Plaintiff maintains that this exception is to be found in that portion of the Insurance Code having to do with surplus line brokers. (§§ 1760-1779, Ins. Code.) Insurance Code, section 1763, provides that a surplus line broker may place insurance with non-admitted insurers under certain circumstances prescribed in the section. Conceding that plaintiff has adequately pled these circumstances in his complaint, an analysis of the pertinent provisions of the Vehicle Code and of the Insurance Code requires us to hold that the claimed exception does not modify section 411.5 of the Vehicle Code.

The purpose of chapter 2, sections 410 to 418 of the Vehicle Code is to insure that victims of negligence in the operation of motor vehicles shall be compensated for their loss and damage. When a defendant fails to pay a judgment against him, caused by his negligent operation of a motor vehicle, the code requires that officers of the Department of Motor Vehicles shall see to it that he is denied the privilege of thereafter operating motor vehicles upon the highways of this state. To avoid this penalty all that any motor operator need do is to see that his car is insured with an insurance company authorized to transact business in

California. The word "authorized" as used in the Vehicle Code means a person admitted to transact insurance business in this state, having complied with the laws imposing conditions precedent to transaction of such business. (Ins. Code, § 24.)

No one may circumvent the purpose and intent of the law by contracting insurance with some out-of-state, fly-by-night concern, through the instrumentality of a surplus line broker. The sections of the Insurance Code relative to surplus line brokers are not in conflict with, nor do they modify in any manner the provisions of the Vehicle Code which require the operator of a motor car who negligently damages another to either pay such judgment as may be rendered against him, or show that the casualty was insured against by an insurance company authorized to do business in the State of California, or thereafter keep off the highways of the state. This conclusion is compelled by familiar rules of statutory construction. (*Johnston* v. *Baker,* 167 Cal. 260 [139 P. 86].)

The judgment is affirmed.

York, P. J., concurred.

DORAN, J.—I dissent. However, I concede that the great weight of authority sustains the conclusion reached in the prevailing opinion. But it is my conviction that such authority is the product of an unwarranted assumption in several particulars. For the sake of brevity, *Watson* v. *Division of Motor Vehicles,* 212 Cal. 279 [298 P. 481], and *Sheehan* v. *Division of Motor Vehicles,* 140 Cal. App. 200 [35 P.2d 359], may be regarded in substance and in general as examples supporting the prevailing opinion which is in accord with the weight of authority. First, it is my opinion that there is an inherent right upon the part of every citizen to drive a car, provided reasonable conditions therefor are met. While the license to drive may be considered a privilege, every citizen possesses the right to that privilege upon satisfying the conditions on which it is to be granted. Second, although properly the subject of police power regulation, such regulation must be reasonable. Third, only reasonable regulations need be obeyed in order to enjoy that right.

Subject only to such regulations as are permitted by a valid exercise of the police power, it is my opinion that

there is an inherent right to a license to operate a motor vehicle, based on the proposition that the license is a mere incident to a form of transportation that permits the people to go about the daily affairs of life in a lawful manner that cannot be, without reason, interfered with by any governmental agency, executive, legislative or judicial. Although it may be more hazardous, there is no difference in principle between transportation in an automobile and transportation in a horse and buggy. Before the perfection and use of the automobile, could it have been urged successfully that horseback riding was not a *right* or that driving a horse attached to a cart was anything but a natural right? Although the methods may have changed, the applicable doctrine remains the same. Government is not the custodian of the people and their welfare and no government is called upon to remove or prevent all of the hazards of life. The argument in support of the weight of authority, to the effect that to deny a license to one unable to pay a judgment will tend to prevent accidents, is only an opinion or assumption. Notwithstanding what the authorities contend to the contrary, in the final analysis, denying the right to operate an automobile because of an inability to pay a judgment accomplishes nothing but hardship for a particular class, whereas others in similar circumstances may, in effect, purchase immunity from such hardship. Moreover, to deny an individual a license to operate an automobile in the circumstances here presented, is a form of punishment, not only unusual in form but also one constituting punishment for debt, both of which are denounced by the Constitution. If the operator of an automobile were deprived of a license for a reasonable length of time for having caused an avoidable accident the above argument would not apply. But appellant is not punished for having caused the accident but for being unable to pay a judgment. That such a situation is discriminatory there can be no question. Logic and reason will not support an argument to the contrary.

The fact that the victim of an accident may have suffered physically or financially affords no justification for the denial of the natural right of another. Moreover, the state neither guarantees nor assures safety for all who utilize the public highways.

In my judgment, to deprive appellant of the right to operate an automobile, which deprivation in the circum-

stances is permanent, is an unwarranted exercise of the police power, is discriminatory and in violation of the clear mandate of the Constitution.