## J. ABRAM DODRER *v.* BELLE I. DODRER
### [No. 28, April Term, 1944.]

414

*Decided June 13, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY, and CAP-PER, JJ.

*D. Eugene Walsh* for the appellant.

*Theodore F. Brown,* with whom was *A. Earl Shipley* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This case brings before the Court, for the first time, the Act of 1941, Chapter 497, which adds Section 41A to Article 16 of the Code of Public General Laws, 1939. The statute provides that a divorce *a vinculo* may be granted when either husband or wife has become permanently and incurably insane. Such a divorce cannot be decreed unless two findings are made by the court. The first is that the "insane person shall have been confined in an insane asylum, hospital or other similar institution for a period of not less than three years prior to the filing of the Bill of Complaint." The second is "from the testimony of two or more physicians competent in psychiatry that such insanity is permanently incurable with no hope of recovery." The statute has other requirements, which need not be discussed here. It provides for service of process, and how the proceedings shall be conducted.

In the case before us, a husband filed his bill of complaint, alleging that he was married on November 4, 1913, that he and his wife had three children, the youngest of whom was seventeen years of age at the time of the suit, and that his wife is permanently and incurably insane and has been confined in the Springfield State Hospital in Carroll County, Maryland, an insane asylum, for a period of more than three years prior to the filing of the bill. The procedural requirements of the statute were followed, answer was filed by guardian *ad litem,* and the defendant herself answered, denying her insanity. The testimony showed that the first mental trouble occurred in 1925, when the wife became highly nervous and upon the advice of a physician, was taken to a private institution for about four weeks. She was then brought home, but became worse, until finally in 1928

she was taken to the Springfield State Hospital, where she remained about six or eight weeks. Then she was brought home, again became worse, and was taken back for a week or two. This was repeated four times, from 1928 to 1930. In August 1930 she was taken back the last time, and has since been under the control of the Springfield State Hospital. Two physicians and psychiatrists from the hospital testified, under the care of one of whom the defendant has been ever since she entered the institution. This physician said that she has dementia praecox or schizophrenia. In the opinion of the doctor, that condition is permanent and incurable. The other physician and psychiatrist, also resident at Springfield State Hospital, has known the defendant for fifteen years. She testified that the defendant is permanently mentally incompetent and incurably insane, and that she has schizophrenia, or, as it used to be called, dementia praecox, of a paranoid type.

The physicians also testified that the defendant had delusions that she was being bewitched and could not adjust herself with her own family, but could get along with strangers. As a result of that condition and the fact that the hospital was crowded, she was placed under the care and supervision of the hospital Social Service, and put in what is called family care. That is, she was placed in the home of a Mrs. Wilson outside of the hospital, but visited at regular intervals, and was always under supervision. She is always directly under the care of the hospital. She went to Mrs. Wilson's in December, 1942. Mrs. Wilson testified, and said she had had no trouble at all with the defendant since she had been with her. Her conduct was the same as any normal person's would be. The defendant herself testified. Her testimony as it appears in the record is quite lucid, and appears to be that of a normal person.

The chancellor reviewed these facts in his opinion, declined to grant the divorce, and dismissed the bill, not because he did not find that the defendant was permanently and incurably insane, but because he could

not find from the evidence that the defendant was confined inside the doors or upon the porches or verandas attached to an insane asylum. He interpreted the statute to require such a finding. From the decree dismissing the bill, the husband took this appeal.

The determination of the causes for which divorces may be granted is a matter for the Legislature. The policy underlying such determination, whether narrow and restricted or whether broad and liberal, is for legislative decision. Legislative action in this respect being remedial in nature, the causes prescribed may have existed prior to the passage of the act. *Elliott v. Elliott,* 38 Md. 357; *Campbell v. Campbell,* 174 Md. 229, 198 A. 414. Such a statute does not violate the constitutional prohibitions against the impairment of contracts and the passage of *expost facto* laws. Dartmouth College case, *Trustees of Dartmouth College v. Woodward,* 4 Wheat. 518. 17 U. S. 518, 4 L. Ed. 629; *Maynard v. Hill,* 125 U. S. 190, 8 S. Ct. 723, 31 L. Ed. 654. The Legislature of this State has in recent years passed acts indicating a more liberal policy toward the granting of divorce. It has added two new causes for divorces *a vinculo.* These are insanity, and voluntary separation for five consecutive years. It has also shortened the time within which a divorce may be granted for abandonment, making it now eighteen months instead of three years. Whether this policy is wise or not is a question upon which great difference of opinion may and does exist. We have nothing to do with this. The function of the courts is to interpret and not to make the laws. The power of determination rests with the legislative branch of the government, the power of construction with the judicial.

In construing the insanity provision which is now before us, as we have said, for the first time, there must be borne in mind what was the intention of the Legislature in enacting it. That is to be found in the first words of the statute, "a divorce *a vinculo matrimonii* may be granted when either husband or wife has become

permanently and incurably insane." The findings to be made before such a divorce can be granted are means provided for the determination of the fact of the permanent and incurable insanity. By the wording of the statute, they can not be dispensed with. The proof must be what the statute requires. Yet they are but methods for the ascertainment of the existence of the prescribed grounds. Viewing it in this light, it becomes clear that the proviso that the party alleged to be insane shall have been confined in an insane asylum, hospital, or other similar institution for a period of not less than three years, is inserted because that is to be a necessary test that for at least that period of time such party has been in such condition that he or she has been under the control of persons who conduct establishments for taking care of insane people.

We are unable to adopt the conclusion of the chancellor that the situation in this case is similar to that in the case of *Dulany v. Fidelity & Casualty Company,* 106 Md. 17, 66 A. 614, followed by him, or that the word "confined" must be as strictly construed here as in that case. That was a suit on an insurance policy, which required that the insured should be paid only for the period of disability "during which he shall be necessarily confined to the house." The Court said that provision was placed in the policy "for the obvious purpose of describing the duration of the period for which the insured, when totally disabled by disease from discharging the duties of his occupation, shall be entitled to draw a weekly indemnity." That case was concerned with the contract which an insurance company made with an insured, to protect him from disability or, to put it another way, to insure him against a disease which might prevent him from discharging his daily duties. It does not matter for the purposes of the divorce statute whether the insane person is able to perform any work, or to be outside of the hospital, or other place of confinement at times. The point with which the Legislature is dealing is whether her mental condition is such that she must

have supervision of the kind given by a hospital. The fact that a patient is harmless enough to be placed outside of the hospital in a private home, although still kept under hospital supervision, does not indicate that she is not incurably insane. It is not intended to grant the right of divorce only from those persons who are so violently insane that they have to be incarcerated at all times. The test is not the manifestation of the mental disease. It is permanence and incurability.

In a statute dealing with property rights, there is a requirement, not found in the divorce statute, of a finding of insanity upon inquisition, Section 13 of Article 45 of the Code. This provides that where any married man or married woman is a lunatic or insane and has been so found upon inquisition, and the said finding remains in force, the husband or wife of such lunatic may convey real estate acquired since the finding as fully as if he or she were unmarried. In construing this last-mentioned statute, the court looked at the purpose rather than the literal words. In the case of *Hadaway v. Smith,* 71 Md. 319, 18 A. 589, 590, it was held that a man, who was tried for assault with intent to kill, and was found insane by a verdict of the jury in the criminal trial, had, to all intents and purposes, been found to be insane by the inquisition of a jury. The "inquisition" strictly construed, means by a jury under a writ of *de lunatico inquirendo.* The Court, speaking through Judge Miller, and discussing the statute said, "Some of the words, taken in their strict, technical sense, are exclusively appropriate to an inquisition under a writ *de lunatico inquirendo,* and such cases are unquestionably embraced by the clause, but to confine its operation to them would be giving to remedial legislation an unauthorized, technical, and narrow construction, disregarding its spirit and purpose." We think a construction should be placed upon the insanity divorce statute, based, not upon a strict interpretation of its words, but upon what it was intended to do. Real intent must prevail over literal intent. *State v. Boyd,* 2 Gill & J. 365; *Jones v. Gordy,*

169 Md. 173, 180 A. 272; *State v. Petrushansky*, 183 Md. 67, 36 A. 2d 533. For that reason we are unable to agree with the chancellor that the appellee has not been confined for the requisite period, and as required by the statute.

The other proviso is that the court must find from the testimony of two or more physicians competent in psychiatry that the insanity is permanently incurable. This does not mean that, if two psychiatrists testify to that effect, the court must make such a finding. The court makes its finding from all the facts before it, but this must include such testimony by two psychiatrists. In the case before us we have this testimony. We also have other testimony, and, what is particularly important, the alleged insane person herself appeared and testified in the presence of the Court. Under such circumstances, the opinion of the chancellor on the fact of insanity would carry great weight. We would under ordinary circumstances follow his findings. *Meyers v. Murphy,* 181 Md. 98, 28 A. 2d 861. It so happens, however, that the chancellor in this case did not state any conclusion he had reached on the nature or character of the sanity or insanity of the appellee. For that reason we have to pass upon the question from the printed record without the benefit of the opinion of the judge who saw the witnesses. It is not altogether satisfactory, in cases of this nature, but we conclude from the testimony of the physicians that there can be no reasonable doubt of the permanent and incurable insanity of the appellee. That being so, the appellant is entitled to a decree of divorce *a vinculo matrimonii.*

Appellee claims that appellant is estopped to deny appellee's mental competency, because in 1930, he had her sign a deed with him of certain real estate. The appellant testified that the property was his, although it was in his and her names, jointly, and that the doctors said she was capable of signing a deed at that time. The question whether or not she was competent at that particular time to execute a valid deed is not before us in

this case. We do not think the appellant, acting upon advice of physicians at that time, is now estopped from establishing as a fact, if it is a fact, that his wife has been insane for three years.

There is another part of Section 41A of Article 16 which should be borne in mind by the chancellor when he enters a decree *a vinculo*. This is that portion which provides for support and maintenance of the wife during the remainder of her nature life and for her necessary funeral expenses, as well as other costs, including compensation for counsel. The chancellor had before him testimony as to the financial condition of the appellant, and may require him to make these payments, secured by a bond, if, in the chancellor's opinion, such a requirement is proper. We call attention, in this connection, to the testimony of the appellant that he had paid nothing for the support of his wife to Carroll County since 1938 or 1939.

> *Decree reversed and cause remanded for further proceedings in accordance with this opinion. Costs to be paid by the appellant.*