[L. A. No. 21731. In Bank. May 29, 1951.]

LOUIS DRIBIN, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Sam Houston Allen for Petitioner.

Harold W. Kennedy, County Counsel, and Wm. E. Lamo-reaux, Deputy County Counsel, for Respondent.

SCHAUER, J.—Petitioner seeks by mandamus[1] to require the Superior Court in the County of Los Angeles to restore to the trial calendar, and proceed with the trial of, a divorce suit brought by him on the ground of incurable insanity (Civ. Code, §§ 92, 108[2]). It appears from the allegations of the

---

[1] By petition first filed in the District Court of Appeal, Second Appellate District, Division One, and by that court denied without opinion on August 21, 1950.

[2] Section 92: ''Divorces may be granted for any of the following causes: . . . Seven. Incurable insanity.''

Section 108: ''A divorce may be granted on the grounds of incurable insanity only upon proof that the insane spouse has been confined to an institution under the provisions of Chapter 1 [i.e., §§ 5000-5160], Part 1, Division 6 of the Welfare and Institutions Code or under the provisions of Section 1026 of the Penal Code or Chapter 6, Title 10, Part 2 of the Penal Code, for a period of at least three continuous years immediately preceding the filing of the action and upon the testimony of a member of the medical staff of said institution that such spouse is incurably insane.

''*Duty to support.* No decree granted on this ground shall relieve the spouse granted the divorce of any obligation imposed by law as a

mandamus petition that petitioner is unable to satisfy certain of the statutory prerequisites to the granting of a divorce on that ground, and that if such prerequisites are constitutionally valid the relief he seeks should be denied.

Petitioner alleges in his mandamus petition that in October, 1949, he filed (presumably in the superior court in Los Angeles) a divorce complaint "against Esther Dribin, by and through her General Guardian." In the divorce complaint he alleged, among other things, his residence in the county and state for more than a year preceding filing of the complaint; that he and defendant intermarried in December, 1941, in Illinois, and thereafter separated; that in May, 1944, defendant, "upon petition of her mother, was adjudged insane in the Probate Court of the County of Hennepin, State of Minnesota, and was by that . . . court . . . committed to the State Hospital for the insane in the State of Minnesota in accordance with the laws of that state"; that defendant had then been, and continued to the date of trial of the divorce action to be, incurably insane; that one Ruth Tanick is defendant's general guardian, appointed as such by the Minnesota court in November, 1945.

Petitioner further alleges that "pursuant to an order of the Respondent Court herein" a copy of the summons and complaint in the divorce action was served upon the general guardian, by publication; defendant defaulted; and the trial was set for August 4, 1950. At the trial petitioner offered in evidence "a copy of a deposition of the Superintendent of Rochester State Hospital in . . . Minnesota . . . in which deposition the said Superintendent set forth that the defendant . . . was an inmate of said Rochester State Hospital and had been continuously since on or about January 5, 1945,

---

result of the marriage for the support of the spouse against whom the divorce is granted. It shall be alleged in the complaint and proved at the trial of the cause either that there is reasonable ability to support the insane spouse for the remainder of the life expectancy or that such insane spouse has property sufficient to provide support for the remainder of the life expectancy, and the court shall make such order for support, or require a bond therefor, as the circumstances require.

"*Service of summons, etc.* If the insane spouse has a general guardian or guardian of his person, other than the spouse bringing the action, the complaint and summons shall be served upon such guardian and he shall defend and protect the interests of the insane spouse. If the insane spouse has no general guardian or no guardian of his person, or if the spouse bringing the action is the general guardian or guardian of his person, the court shall appoint a guardian ad litem, who may be the district attorney or the county counsel, if any, to defend and protect the interests of the insane spouse."

and that in his opinion the defendant was incurably insane."
At this point the trial court ruled that the divorce complaint
"was insufficient in that it did not comply with the provisions"
of the second paragraph of section 108 of the Civil Code, which
require an allegation "either that there is reasonable ability
to support the insane spouse for the remainder of the life
expectancy or that such insane spouse has property sufficient
to provide support for" that period; the court then ordered
the cause off calendar "until such time as the plaintiff should
amend the said complaint to include the said allegations."
Petitioner then alleges that he has "no property or estate
whatsoever," is therefore unable to "comply with the condi-
tions imposed upon him" by the trial court, and seeks man-
damus on the ground that the statutory provision requiring
proof of ability to support the insane spouse (1) is unconsti-
tutional in that it deprives him of due process and equal pro-
tection of the law, and (2) has no applicability to a nonresi-
dent insane spouse.

The county counsel, in his brief filed in opposition to the
petition for mandamus, urges that the divorce complaint was
clearly insufficient in that it alleges confinement of the defend-
ant spouse *outside* the State of California, whereas section
108 of the Civil Code in its first paragraph requires proof of
confinement *in* this state for the statutory three-year period.

### 1. *Proof of Ability to Support*

We are of the view that petitioner is correct in his
contention that the statutory requirement of allegation and
proof of ability or ownership of property sufficient to support
the insane spouse for the remainder of the life expectancy
creates an arbitary and unreasonable class discrimination be-
tween those of different financial resources, and it was so held
in *Morganti* v. *Morganti* (1950), 99 Cal.App.2d 512, 516-517
[222 P.2d 78]. In that case, Mr. Justice Peek, authoring
the opinion of the District Court of Appeal, quoted the state-
ment in *Takahashi* v. *Fish & Game Com.* (1947), 30 Cal.2d
719,[3] 727 [185 P.2d 805], that "the classification shall not be
arbitrary, but must be based upon some difference in the
classes having a substantial relation to a legitimate object to
be accomplished," and enunciated the following conclusions:
"It would seem apparent that the purposes of section 108 are
(1) to provide the manner of proof where the ground for

[3]Reversed in 1948 (334 U.S. 410) on the ground that the classification
there involved was unconstitutionally discriminatory.

divorce is the incurable insanity of the defendant spouse, and (2) to provide a means of securing continuing financial support for the insane spouse. Applying the 'substantial relation' test enunciated in *Takahashi* v. *Fish & Game Com., supra,* to the present case, it cannot be said that the financial status of the parties bears any more relation to the first object of section 108 stated above than does the race of the applicant bear to the issuance of a marriage license. (See *Perez* v. *Sharp* [1948], 32 Cal.2d 711 [198 P.2d 17].)

"Furthermore proof of financial liability as set forth in the second sentence of the second paragraph of said section becomes wholly superfluous to the attainment of the second object thereof, since by reason of the specific terms of the preceding sentence no decree granted on the ground of incurable insanity can relieve a spouse of 'any obligation imposed by law as a result of the marriage for the support' of the insane spouse. (See Civ. Code, § 155, and Welf. & Inst. Code, §§ 5077, 5105.6.) It follows that the requirement contained in section 108 of the Civil Code, that it must be alleged in the complaint and proved at the trial that there is either reasonable ability to support the insane spouse or that such insane spouse has property sufficient to provide support, constitutes a classification based on financial ability which is without reasonable relation to either of the legislative objects of (1) providing a manner of proof w[h]ere the ground for divorce is incurable insanity, or (2) securing financial support for the insane spouse, and that such classification is, in effect, an arbitrary denial of equal protection and is, therefore, invalid."

It has been suggested that such a holding is inconsistent with the views which we expressed in *Escobedo* v. *State of California* (1950), 35 Cal.2d 870, 879 [222 P.2d 1]. In that case we upheld a statute requiring the Motor Vehicle Department to suspend the petitioner's license to operate an automobile upon finding that after being involved in an accident causing substantial damage to person or property he had failed to meet the financial security requirements imposed by the Vehicle Code. It seems obvious that the Escobedo case is not authority for the proposition that every classification based on financial ability is necessarily reasonable and constitutionally valid. Upholding the requirement that the operator of an automobile, after he has been involved in a highway accident, furnish reasonable security for the damages his negligence appears to have caused or suffer suspension of his operator's license, is not the equivalent of holding (in effect) that the right to di-

vorce (or to marry) may be limited to those who can purchase an adequate life annuity for a spouse.

Furthermore, the Escobedo decision is based in part on the existence of "a compelling public interest" in promoting safety on the highways. Negligent use of the highways is discouraged by penalizing such use and by imposing responsibility for damage thereby inflicted on other persons or to their property. (See *Escobedo* v. *State of California* (1950), *supra*, p. 876 of 35 Cal.2d; *Watson* v. *Division of Motor Vehicles* (1931), 212 Cal. 279, 287 [298 P. 481].) But denial of divorce for failure to possess wealth sufficient to support an insane spouse for life cannot be upheld as a penalty nor does it tend to protect the public against negligent use of a dangerous instrumentality. No compelling necessity has been found by the Legislature or suggested to us for generally denying divorce to the poor and making it available to the wealthy. Here the state has guarded against financial dependency of the insane spouse by providing that the divorce of an insane spouse does not relieve the other spouse of "any obligation imposed by law as a result of the marriage for the support" of the insane spouse.[4] As declared in the Morganti case, in view of such provision, the additional requirement of proof of possession of financial ability appears arbitrary, and quite obviously would sometimes, for no compelling reason, deny divorce to the poor while granting it to the more wealthy. Since full liability for support perdures, after divorce as during the marriage, and since the court can exact security as in any case according to the means of the spouse securing the decree, the only basis left for the classification is wealth as against poverty. In this application it is not a valid classification.

▇ It is further held in the Morganti case that the objects of section 108 "are in no way thwarted or frustrated by the deletion of the invalid requirement," that such requirement is therefore severable, and that the balance of the section may be given effect and a divorce granted on the ground of incurable insanity without proof of financial responsibility. We are satisfied that the quoted discussion and holding of the District Court of Appeal adequately and correctly dispose of the problem there considered. Insofar as the following cases appear to be inconsistent with *Morganti* v. *Morganti*, such cases are hereby disapproved: *Tripoli* v. *Crivello* (1948), 88

---

[4]It may be noted that petitioner in the instant case expressly states that he has no quarrel with this provision of section 108.

Cal.App.2d 760 [199 P.2d 726]; *Wirz* v. *Wirz* (1950), 96 Cal.App.2d 171 [214 P.2d 839].

## 2. *Proof of Confinement in California*

Insanity is not generally recognized in any of the states of the United States as a ground for divorce unless made so by statute. By the year 1949, 26 states and territories of the United States had adopted such a statute (see 22 So.Cal.L.Rev. 494; 35 Cal.L.Rev. 104; Vernier, American Family Laws (1932), p. 60; 27 C.J.S. 593, § 49; 17 Am.Jur. 228, § 152); but, assertedly, "for humanitarian reasons, the statutes making postnuptial insanity ground for divorce seem to have been subjected to a strict construction." (113 A.L.R. 1254; *cf.* *Dodrer* v. *Dodrer* (1944), 183 Md. 413 [37 A.2d 919, 922], holding that placement in a private home but under supervision of state hospital met statutory requirement of confinement "in an insane asylum, hospital, or other similar institution," *contra*, see *Finkelstein* v. *Finkelstein* (1948), 88 Cal.App.2d 4 [198 P.2d 98].) The rule is well established that the power of the state Legislature with regard to divorce is supreme except as limited by the Constitution ⟨9 Cal.Jur. 627-628, § 4⟩, and it is also generally held that the state, because of its interest in maintaining the marital relationship, "unless good cause for its dissolution exists, is an interested party" to a divorce action (*id.*, p. 634, § 9).

The question is thus again presented: Is the classification discriminating, for purposes of divorce, between "incurably insane" persons confined within this state and similarly ill persons confined in some other jurisdiction "based upon some difference in the classes having a substantial relation to a legitimate object to be accomplished?"; i.e., the proof or determination of the existence of such "incurable insanity" as will entitle the complaining spouse to a divorce upon that ground. Petitioner urges that "there would seem to be no logical reason for such discrimination"; that the discrimination for all practical purposes amounts to discrimination on the basis of state citizenship.

 The following pertinent principles are well established: "Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous. [Citations.]

A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it." (*Sacramento M. U. Dist.* v. *Pacific G. & E. Co.* (1942), 20 Cal. 2d 684, 693 [128 P.2d 529]; see, also, *In re Herrera* (1943), 23 Cal.2d 206, 212 [143 P.2d 345]; *Reclamation District* v. *Riley* (1923), 192 Cal. 147, 156 [218 P. 762].) "The existence of facts supporting the legislative judgment is to be presumed and the burden of overcoming the presumption of constitutionality is cast upon the assailant." (*Takahashi* v. *Fish and Game Com.* (1947), *supra*, 30 Cal.2d 719, 728 (334 U.S. 410 [68 S.Ct. 1138, 92 L.Ed. 1478]); *People* v. *Western Fruit Growers* (1943), 22 Cal.2d 494, 507 [140 P.2d 13]; see, also, *In re Fuller* (1940), 15 Cal.2d 425, 437 [102 P.2d 321]; *California Physicians' Service* v. *Garrison* (1946), 28 Cal.2d 790, 803 [172 P.2d 4, 167 A.L.R. 306].) The classification should be reasonable; i.e., "have a substantial relation to a legitimate object to be accomplished . . . [I]t is not our concern whether the Legislature has adopted what we might think to be the wisest and most suitable means of accomplishing its objects. [Citations.]" (*Lelande* v. *Lowery* (1945), 26 Cal.2d 224, 232, 234 [157 P.2d 639, 175 A.L.R. 1109].)

Applying these principles to the statute here attacked, we think it cannot be held that as a matter of law the Legislature has imposed a wholly arbitrary requirement upon those seeking a divorce on the ground of insanity. It is elementary that "The insane have always been regarded as subject to control on the part of the state, both for their protection and for the protection of others." (14 Cal.Jur. 341-342, § 6.) The legal concept of "insanity" may well vary considerably in the different jurisdictions and in different applications of the term (see, e. g., 29 Va.L.Rev. 775; 44 C.J.S. 5-18 in which it is pointed out (p. 9) that " 'insanity' is a broad, comprehensive, and generic term, of ambiguous import, for all unsound and deranged conditions of the mind"). In this state a definition of such concept in respect to civil proceedings has been expressly set forth in sections 5040 and 5041 of the Welfare and Institutions Code, and in addition that code (see §§ 5047-5155) throws about an alleged insane or incompetent person various safeguards by way of notice, service of process, hearings, evidence, jury trial, etc., before an adjudication of insanity and commitment therefor may be made. (See, also, 14 Cal.Jur. 341-375.) The Legislature in requiring proof of confinement in California may have had in mind that

the same safeguards might not be afforded before adjudication and confinement in other jurisdictions.

Other states[5] have been similarly explicit in specifying the conditions or the evidence upon which divorce may be granted on the ground of insanity (see 29 Va.L.Rev. 802-805). Thus "confinement" in various designated institutions for stated periods of time—usually five years—has been required in some twelve states, while others provide only that there must have been an adjudication of insanity plus elapsed periods of time of varying lengths. Some states have required examination by three physicians, specialists in the field, and agreement as to the incurability of the insanity, while others have specified examination by from one physician to five persons, including the state psychiatrist and one physician. No case has been discovered in which any of such requirements has been held unconstitutional.

We are of the view that the Legislature has acted within its constitutional power in limiting divorce on the ground of incurable insanity to cases wherein the insane spouse is actually domiciled in this state by requiring proof of confinement in this state for the statutory three-year period, and that inasmuch as petitioner affirmatively alleges on the face of his complaint facts showing his inability to produce such proof it follows that he is not entitled to the relief he seeks.

The alternative writ heretofore issued is discharged, and the peremptory writ is denied.

Gibson, C. J., Shenk, J., and Carter, J., concurred.

EDMONDS, J.—I concur in the conclusion that section 108 of the Civil Code limits the right to a divorce upon the ground of incurable insanity to those persons whose spouses have been confined to an institution in this state for the statutory period. But I do not agree that the requirement as to proof of ability to support is unconstitutional.

In *Escobedo* v. *State of California*, 35 Cal.2d 870, 879 [222

---

[5]Utah formerly denied divorce where the insane spouse was outside Utah and could not be personally served within the state (*Schafer* v. *Ritchie* (1916), 49 Utah 111 [162 P. 618]), but the rule was changed by amendment, and constructive service is now permitted in such cases (Utah Code, 1943, 40-3-1 (Ann. § 13); 35 Cal.L.Rev. 106). Idaho, from 1895 to 1903, required confinement within the state but thereafter permitted divorce where confinement was in Idaho or in a sister state or territory (*Gorges* v. *Gorges* (1926), 42 Idaho 357 [245 P. 691, 693]).

P.2d 1], the petitioner was deprived of his license to operate an automobile because he failed to meet the demand for financial security specified by the Vehicle Code. The statute was challenged upon the ground, among others, that it violates constitutional guarantees because those who are financially able to carry insurance or post security are favored as against those who cannot do so.

In rejecting this contention, the court held: "Financial responsibility laws such as this do not unconstitutionally discriminate against the poor . . . The fallacy of the argument that the law favored the rich over the poor [as stated in *Watson* v. *Division of Motor Vehicles,* 212 Cal. 279 [298 P. 481]] 'lies in the failure to distinguish between equality of opportunity and ability to take advantage of the opportunity which is offered to all. The equality of the Constitution is the equality of right, and not of enjoyment.' " It was also said in the Watson case: "So long as the statute does not permit one [with certain financial ability] to exercise the privilege while refusing it to another of like qualifications, under like conditions and circumstances, it is unobjectionable upon this ground." (212 Cal. at p. 284.)

Although the statute concerning support prevents equality of enjoyment, it is nevertheless constitutional if its provisions bear any reasonable relation to the purpose of the enactment. Otherwise stated, the question is whether the classification is a natural one; is the classification reasonably related to the end in view? (*Power Mfg. Co.* v. *Saunders,* 274 U.S. 490 [47 S.Ct. 678, 71 L.Ed. 1165].) When considering this question, the courts should approach with caution. They ". . . have nothing to do with the wisdom, policy, or expediency of the law for the power to make the law carries with it the power to judge of its necessity, expediency, and justice, and, primarily at least, of the reasonableness of the means and methods used to accomplish the end sought to be obtained." (*Watson* v. *Division of Motor Vehicles, supra,* at pp. 285-286.) A canon of constitutional construction is that a statute is constitutional if there is any reasonable basis for its enactment.

A declared purpose of section 108 as stated in the majority opinion, is " '. . . to provide a means of securing continuing financial support for the insane spouse.' " One means chosen by the Legislature to accomplish this purpose is the requirement laid upon the party seeking a divorce upon the ground of incurable insanity to plead and prove

(1) that he has the reasonable ability to support the insane spouse for the remainder of the life expectancy, or (2) the insane spouse has sufficient property for that purpose. Certainly, there is a natural and reasonable relation between the means and the end.

Paraphrasing the reasoning of a key sentence in the Escobedo case, "Those divorced by their indigent spouses may be indigent also, and as little able, as the divorcing spouses to bear the cost of their support." Under such circumstances, the insane spouse, like the person injured in an automobile accident, may become a public charge. If a divorce is granted on the ground of insanity, the plaintiff will be free to remarry and incur the burden of supporting another spouse in addition to the continuing duty to support the insane person who has been cast off. Obviously, the ability to fulfill the duty toward the insane person may be, and under ordinary circumstances will be, decreased by permitting a divorce. However, the wisdom of the enactment is not a question for the courts; they cannot properly be concerned with the policy or expediency of the law.

The statute attacked by Dribin gives to every person married to an insane spouse the right to secure a divorce upon the ground of that insanity under certain specified conditions applicable alike to all such persons. Everyone whose spouse is incurably insane and is confined under the conditions stated by the Legislature has the requisite "equality of opportunity," the test laid down in the Escobedo case. That Dribin has not the "ability to take advantage of the opportunity which is offered to all" does not make the law unconstitutional. The "equality of right" which Escobedo had, in common with all other operators of motor vehicles, was the right to establish his financial responsibility in some manner authorized by the Vehicle Code. That he did not have the ability to enjoy that right did not, it was held, affect the constitutionality of the provisions of the Vehicle Code, which were upheld. For the same reason, in my opinion, section 108 of the Civil Code is not unconstitutional insofar as it requires proof of financial responsibility.

Traynor, J., and Spence, J., concurred.